(77 South. 295)

No. 20993.

WOOLLUMS v. HEWITT et al.

(Nov. 26, 1917. Rehearing Denied Jan. 3, 1918.)

*(Syllabus by Editorial Staff.)*

1. COVENANTS ⊚═122—ACTIONS FOR BREACH OF WARRANTY—SUFFICIENCY OF EVIDENCE.

In an action by the grantee under a deed with full warranty to recover the value of standing timber which had been previously sold to another party by whom it was subsequently removed, evidence *held* insufficient to show that the grantee knew of the sale of such timber.

2. COVENANTS ⊚═46—COVENANT OF WARRANTY—BREACH.

One acquiring land by a deed calling for a clear title does not acquire subject to a recorded sale of standing timber so as to prevent a recovery on the grantor's warranty.

3. VENDOR AND PURCHASER ⊚═193—SALES—PROPERTY PASSING — STANDING TIMBER — "ACCESSORY."

Under Civ. Code, art. 2461, providing that the sale of a thing includes that of its accessories, on a sale of land without reservation of the standing timber the timber passes with the land as an "accessory" of the land.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accessory.]

Appeal from Twelfth Judicial District Court, Parish of De Soto; John H. Boone, Judge.

Action by J. A. Woollums against Mrs. J. P. Hewitt and others. From a judgment for defendants, plaintiff appeals. Judgment set aside, and judgment granted in favor of plaintiff.

Pegues & Burgess, of Mansfield, for appellant. Liverman & Pollock, of Mansfield, for appellees.

PROVOSTY, J.     [1] Defendants sold a tract of land to plaintiff with full warranty and without mention that the standing timber on the land had been already sold to another party. This other party having removed the timber, this is a suit to recover from defendants the value thereof. The defenses are that the timber was not included in the sale to plaintiff; and that, at all events, its value was much below the amount claimed. W. B. Hewitt, the deceased husband of one of the defendants and father of the other defendants executed with plaintiff an agreement to sell the land, and after his death the defendants executed an act of sale. Neither of these acts makes reservation of the timber, but oral evidence is offered to show that plaintiff had knowledge of this previous sale of the timber, and the court is asked to deduce from that fact that the intention was that the timber should be considered as not going with the land. Plaintiff testifies positively that he had no such knowledge.

The agreement of sale between plaintiff and W. B. Hewitt was made in May, 1911. In it W. B. Hewitt agrees to sell with full warranty of title, and "agrees and binds himself to furnish a full and complete abstract of the property, and should there be any defects in the title to affect its validity, agrees to perfect the said title on or before January 1, 1912"; and in default of doing so to pay $2,000, and plaintiff pays $2,000 cash, and agrees to pay on that date $500, and to execute his three notes each for $2,500, falling due in one, two, and three years, and, in default of doing so, to forfeit the $2,000 cash payment.

The promised abstract was duly furnished; plaintiff submitted it to counsel; and the title having been pronounced good and perfect, defendants and plaintiff carried out the agreement of sale by executing a warranty deed on December 30, 1911.

The said agreement of sale was made in De Soto parish, where W. B. Hewitt lived, and where defendants live, and where the property in question is situated; and the act of sale of December 30, 1911, also was there executed. Plaintiff lived then and still lives in the state of Iowa, and has been coming to De Soto parish only occasionally.

Plaintiff went at one time to the courthouse of De Soto parish, and asked to see

the act by which the timber had been sold. This timber sale, by the way, was in September, 1906, nearly five years before the agreement of sale. The act was shown him. The deputy clerk testifies that this was in the spring of 1911; that he is positive it was at that time because he remembers it was in the old courthouse, and the records were moved out of the old courthouse in the summer. The clerk of court remembers the occasion when plaintiff called to see this act, but does not remember whether it was in the old courthouse or not.

Plaintiff says that this visit to the courthouse was after he had heard that the timber was to be removed, and that this was in December, 1912.

Several witnesses testify to admissions made by plaintiff after he had set about bringing this suit. Mr. Parsons, the attorney who had made the abstract of title, testified that he advised plaintiff that his right to recover would depend upon whether at the time of the purchase of the land he knew, or not, that the timber had been already sold, and that plaintiff stated then that he could not be sure on that point.

Mr. Williams was present at the conversation between plaintiff and Mr. Parsons, and does not remember that such a statement was made. He says that all that was said was with regard to the abstract which Mr. Parsons had made and did not at first remember having made.

Dr. W. B. Hewitt, one of the defendants, testified that when he asked plaintiff whether at the time of the sale plaintiff did not know that the timber had been sold, plaintiff, at first, evaded the question, and then answered that he did not at that time know of the sale of the timber.

Mr. Liverman, the attorney of defendants in this case, testified that plaintiff told him he (plaintiff) was not sure he did not know at the time of the sale that the timber had been sold.

Plaintiff's statement that his visit to the courthouse to see the timber deed was when he heard that the timber was to be removed lends plausibility to his testimony fixing the date of this visit long after his purchase, for, so far as appears from the record, nothing had until then brought to his knowledge the fact of the timber having been sold. It is not suggested that anybody had told him; not even W. B. Hewitt. And, indeed, the very great probability is that W. B. Hewitt when he entered into the agreement of sale had forgotten about this timber sale, as otherwise he would hardly have made this agreement so unqualified on the point of the perfect title to be given. It is hardly believable that if he had remembered this timber sale he would not have reserved the timber from the sale. Then, again, if plaintiff had known of this timber sale before his purchase, the time for him to have made himself acquainted with it by an inspection of the act would have been before his purchase, not long afterwards.

The oral evidence is too weak, we think, to overthrow the title which the documents show the plaintiff acquired. Oral admissions are known in the law as the weakest kind of evidence.

[2, 3] Counsel for defendants argue that by the recordation of the timber sale plaintiff was advised of the existence of this sale, and that he must be held to have acquired subject to it, and that, at all events, the most he can pretend is that this timber sale was an incumbrance on the property, and was concealed from him, and that therefore his only right of action is in damages, and that he has suffered no damages, since the property, apart from the timber, is worth to-day a great deal more than he paid for it, as the result of the discovery of oil in that locality.

It goes without saying that one who acquires land by a deed calling for a clear title does not acquire subject to recorded in-

cumbrances, and also that in a sale of land without reserve of the timber standing upon the land the timber passed with the land as an accessory of the land. C. C. art. 2461. Therefore plaintiff acquired free of incumbrances, and acquired the timber as part of the thing sold.

The evidence fixes with sufficient certainty that the timber removed amounted to 1,-130,000 feet, and that about two-thirds of this was virgin timber worth $2.50 to $3 per thousand. We adopt the lower estimate, and hold that for that amount plaintiff is entitled to judgment. The other third of the timber was second growth, for which no value is fixed, except that one millowner testifies that his mill would consider it to be of no value. As to this third, therefore, judgment must go against plaintiff.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that there now be judgment in favor of John A. Woollums against Mrs. Jerusha P. Hewitt, in her individual capacity and as tutrix of her minor son, L. R. Hewitt, and against W. B. Hewitt, J. G. Hewitt, and M. R. Hewitt, jointly, in the sum of $1,883.-30, with legal interest thereon from judicial demand August 30, 1913, and that the defendants pay the costs of this suit.

O'NIELL, J., concurs in the decree.