## UNITED STATES v. WURTSBAUGH et al.
### No. 10676.

Circuit Court of Appeals, Fifth Circuit.

Feb. 7, 1944.

Norman M. Littell, Asst. Atty. Gen., Fred W. Smith and Vernon L. Wilkinson, Attys., Department of Justice, both of Washington, D. C., and Malcolm E. Lafargue, U. S. Atty., and Jared Y. Fontenot, Asst. U. S. Atty., both of Shreveport, La., for appellant.

Sidney M. Cook, of Shreveport, La., H. F. Madison, Jr., of Monroe, La., and W. Dan Files, of Bastrop, La., for appellees.

Before SIBLEY, HUTCHESON, and WALLER, Circuit Judges.

HUTCHESON, Circuit Judge.

In a proceeding to condemn lands and the timber thereon which had been severed by sale, the United States moved for and obtained a directed verdict and judgment fixing, in accordance with its proof, the value of the lands and timber condemned.[1]

[1] This is what the record shows as to the pleadings: On July 3, 1941, the United States filed its petition in condemnation against 2581.72 acres of land, naming Wurtsbaugh and others as apparent owners, and was awarded an order for immediate possession. On Feb. 16, 1942, it filed in that proceeding its declaration of taking No. 7 as to the three tracts here involved, deposited as estimated compensation therefor for Tract E-15, $2800.00, for Tract E-17, $800.00, and Tract E-29, $3147.00, a total of $6747.00, and on the same day obtained a judgment confirming the possession previously awarded. On Sept. 9, 1942, it filed a supplemental petition bringing in as parties, Southern Kraft Corporation and others as claiming interests in the land in addition to the interest claimed by Wurtsbaugh and the others, originally named as owners. On Sept. 29, 1942, Wurtsbaugh and the co-owners of the land, answered; that on Jan. 21, 1942, they had sold the timber to Southern Kraft Corporation and others with record of the conveyance; that the estimated compensation deposited by the United States was the amount agreed upon between them, as sellers, and the United States, as purchaser, in options of date July 31, 1941, for the purchase of the lands exclusive of the timber, and that said amounts so deposited, while adequate for the lands alone, were less than the value of lands and timber. There was a further plea that if as written the options included the timber, this was through mistake and they should be reformed to express and carry out the intention of the parties to include the land alone, the only interest sellers owned. On the same day the timber claimants, Southern Kraft Corporation, et al., filed their answers setting out the value of the timber on the three tracts separately, amounting in the aggregate to $6,721.78.

This is the record of the trial: Counsel for the government offered and filed in evidence the options on each of the three tracts and placed one witness on the stand to prove values. He fixed values on the timber and land in each tract as follows: Tract E-15, $3400.00, of which $2600.00 is for timber and timber lease; Tract E-17, $1375.50, of which $975.50 is for timber and timber lease; Tract E-29, $4924.50, of which $1347.00 is for timber and timber lease. Counsel then stated that the government would close. Defendants offered no evidence except timber deeds and the fact that they were of record. Whereupon the following proceeding occurred: Mr. Fontenot for the United States, "That is all, Your Honor, and I would like to ask for an instructed verdict on these three tracts—Tract No. E-15, Declaration of Taking No. 7, in which we ask for a directed verdict in the sum of $3400.00, in which amount is included the sum of $2600.00 for the timber and lease; Tract No. E-17, Declaration of Taking No. 7, in which we ask for a directed verdict in the sum of $1375.50, in which amount is included the sum of $975.50 for the timber and timber lease. With reference to Tract E-19, Declaration of Taking No. 7, we ask for directed verdict in the sum of $4,924.50, in which amount is included the sum of $1347.00 for the timber and lease". The Court: "Let the directed verdict be granted, and I will ask the juror on the end here, No. 1, to sign all three of the directed verdicts." Whereupon directed verdicts as prayed for were signed, returned and filed.

This is the record after the trial: On motion of the defendants, which was not opposed, that $6747.00, the amounts deposited as estimated compensation, be distributed, and the balance of the $9700.00 awarded be distributed when paid in, there was, on Oct. 5, an order to pay over the amounts deposited in the proportions fixed in the motion and a direction that the balance of the award, $2953.00, be paid into court and for its distribution when paid. On Dec. 8th, without objection of any kind thereto or any request for its modification, judgment was entered on the verdict. Without moving to correct it or in anywise complaining of it below, the United States, on March 6th, appealed.

It is here complaining of the judgment thus obtained and seeking its reversal.

Appellees insist that having obtained a verdict establishing, in accordance with the evidence it offered, the value of the land and timber condemned and having without objection thereto procured or permitted the entry of judgment thereon, the United States may not now seek its reversal. Pointing out that it moved for the verdict only after the offer made by it, of option contracts[2] with the landowners as conclu-sive of the value, had been rejected by the court[3] and an exception had been reserved, the United States urges upon us that its motion for verdict and judgment must be considered as made subject to its reserved objection with the consequent right to have the judgment set aside and hearing rendered upon the basis of the values the option contracts fixed.

We cannot agree. Wachovia Bank & Trust Co. v. United States, 4 Cir., 98 F.2d 609, 612[4] and Danforth v. United States, 308

---

[2] These contracts dated July 31, 1941, recited a consideration of One Dollar and other valuable considerations. The vendors represent that they are the owners of the property and that they offer and agree to convey in accordance with the terms and conditions set forth, "the land with the buildings, improvements and equipment thereon, and all rights and appurtenances thereto". There follows in each contract; a description by section and township numbers with no mention of the timber either by reservation out or inclusion in the conveyance; the purchase price to be paid after the United States has accepted the offer, has examined the title and found it to be good, and a general warranty deed has been executed, conveying the land to the United States free from all encumbrances, and a provision that the offer may be accepted within 90· days (the offer was accepted on 8-18-41). Finally there was a clause Six providing: "The Vendor agrees that in the event the United States determines, notwithstanding the prior exercise of this offer, the title to said land or any portion thereof or any interest therein, to be unsatisfactory for purchase by deed, the United States, at its election, may acquire the same by condemnation with or without a declaration of taking; and in that event, the Vendor agrees to co-operate with the United States in the prosecution of such proceedings, and the Vendor agrees that this option shall, without more, constitute a stipulation which may be filed in such proceedings and shall be final and conclusive evidence of the true value of the whole of said property and of the proper award to be made in such proceedings."

[3] This is the record: Mr. Fontenot: "Your Honor in connection with Tract Nos. E-15, E-17, and E-29, I wish to introduce and offer in the record an option signed by the various parties in Tract E-15 in the sum of $2800.00; Tract E-17 in the sum of $900.00; and Tract E-29 in the sum of $3000.00." Mr. Cook: "On behalf of the title owners who grant-ed these options, I concede they would be admissible as evidence of value but I want to object to them if it is the Government's intention to stand upon these as being binding contracts for the reason that there was error in the confection of them and they do not exclude the timber rights and timber lease and all parties at interest were not parties to the option, the timber deed and the timber lease having been previously recorded to the execution of these options." The Court: "The ruling of the court will be as to one phase of the option, that because of the statutory law of Louisiana permitting of such sale of timber, and because of the want of definite particularities, it is the view of the court that the timber that had been previously sold and the deed placed of record prior to the date of these options, and will be excluded from the offering. To which, do you wish to file an objection, Mr. District Attorney?" Mr. Fontenot: "Yes Your Honor, it is the Government's contention that would include the timber and the land, and subject to the objection and ruling of the Court I would like now to go into the question of the value of the land and timber." Thereupon Green, upon whose testimony the directed verdict was based, was called as a witness on values.

[4] In the Wachovia case, the award of the commissioners was in conformity with the option, and the complaint of the owners was that they were entitled to offer evidence showing a greater value at the time of the appraisement than that price. The appellate court holding the vendor respondents bound by the price per acre fixed in the option, said, "Commissioners in condemnation proceedings are, of course, not bound by the price fixed in the option; and, if the point were raised by one not a party to the option, a different question would be presented. A party to the option, however, is not in a position to complain that the price fixed by the option was adopted by the commissioners. The option was valid; the respondents them-

U.S. 271, 60 S.Ct. 231, 235, 84 L.Ed. 240,[5] on which it relies are not at all in point. In neither of them had the party complaining of the award requested that that exact award be made. In both of them the condemnee was the sole owner of the property sought to be condemned. In both of them the condemnation proceedings were resorted to by agreement of the parties to the option as the best method for clearing and passing the title of the optionor, and with the full and complete understanding that the condemnation award should be the same as the option price.

In the Wachovia case, the United States, and in the Danforth case, the optionor, throughout took a consistent position that *the option price* and *the award* must be the same. Neither at any time, procedurally or in substance, took an inconsistent position. Here, in attitude and action, the United States pursued an entirely different course. It did originally offer the options in support of the contention it then made, and now seeks to renew, that the *awards* as to the land and timber must *conform to the option price*. When, however, the objection was made and sustained that those prices were for the land only and did not include the timber, the United States did not stand to this position. Instead, completely abandoning it, it offered evidence valuing the land at less, and the land and timber at more, than those prices, and the evidence all in, requested and obtained a verdict not for the sums fixed in the options but in accordance with the evidence it had offered, and a judgment on, and in accordance with the verdict, a position wholly inconsistent and irreconcilable with the position it now takes. Under the plainest principles, it may not, having invited the direction of the verdict and the entry of the judgment, and thus relieved appellees of the necessity to offer evidence in support of their pleaded defenses and denials, which the action of the United States in requesting a verdict satisfactory to appellees made unnecessary, put the judge in error for doing what it invited him to do.[6] Here the values of the properties condemned have been fixed by ver-

---

selves requested the institution of condemnation proceedings; * * * the respondents were bound by the price in the option; and there was no error in the trial below."

[5] The Danforth case arose under a statute providing for condemnation and also that "When the owner of any land, easement, or right of way shall fix a price for it which, in the opinion of the Secretary of War is reasonable, he may purchase same at such price". 33 U.S. C.A. § 702d. By letter the Secretary of War had offered a price of $31,681.98 for the flowage easement desired, and the letter had recited, "Should this offer be accepted, friendly condemnation proceedings shall be entered in court with the request that an agreed verdict be offered in the amount of this offer". After the acceptance of this offer, there was an attempted withdrawal of it by the United States, and a petition was filed to condemn. The owner set up in the condemnation proceedings the written offer and its acceptance and sought payment of that sum. The court sustained a motion of the United States to strike this portion of the answer but upon the coming in of an award of $17,921.70, the petitioner reasserted his claim that the agreement was decisive in fixing the award at $31,681.98. The district judge, rejecting the claim, confirmed the report of the commissioner. The Supreme Court reversed saying, "We construe the accepted offer as an agreement to fix the price at the named figure for the easement sought. Paragraph 3 of the letter shows condemnation was in mind. * * * We have no doubt that the authority to purchase given to the Secretary of War is sufficiently broad to authorize a purchase of petitioner's interest in land subject to perfecting the title through condemnation. The effect of such an agreement is to fix the value of the easement when the authority of the Court is invoked against a party to the agreement to acquire good title."

[6] "A party cannot be heard to complain in an appellate court of an error which he invited in the lower court in a civil case. 'Such errors, if any, are to be imputed to the party making the request rather than to the court.'" Smails v. O'Malley, 8 Cir., 127 F.2d 410, 414.

In order to review a ruling, it is necessary that the question be preserved. Cyclopedia Fed. Procedure, 2nd Ed., Sec. 5068.

"Objections to the verdict or findings of the jury, judgments and orders, * * * must be made at the time with opportunity to correct them or take appropriate action." Cyclopedia Fed. Procedure, 2nd Ed. Sec. 5050.

An appellant or plaintiff-in-error will not be heard to allege errors in instructions which were given at his request by the trial court. 4 C.J. 707; 14 R.C.L. 815; Maxwell Land-Grant Co. v. Daw-

538

dicts in accordance with the government's evidence and directed at its request at sums in excess of the option prices. The judgment complained of was entirely in accordance with those verdicts. Nothing in the record impeaches it, indeed, the record shows it to be fair and just. It is

Affirmed.

SIBLEY, Circuit Judge (concurring).

If the United States be considered as in position to complain touching the "options", there was no allegation or prayer in the pleading of the United States with reference to them and no effort to enforce them as sales contracts. There was only the usual condemnation case. The "options" each provide that in the event of condemnation, "this option shall, without more, constitute a stipulation which may be filed in such proceedings and shall be final and conclusive evidence of the true value of the whole property and of the proper award to be made in such proceedings". But the timber owners were parties to the condemnation proceedings, and had not signed or bound themselves by these stipulations, so the stipulations could not operate as to the timber. If they refer only to the land without the timber as the landowners contend, the United States gained by disregarding the values they set up. There was no error as against the United States in ignoring them.

HUTCHESON, Circuit Judge.

While concurring fully in all the majority opinion says, I am of the further opinion that if the United States had put itself procedurally in a position to complain of the verdict and judgment, it would not have been entitled to the relief it seeks, in effect the specific performance of an option agreement, which, because the United States had not accepted but had rejected the title, had not become a contract of sale. Under the settled law of Louisiana,

such an agreement may not be specifically enforced.[1] The authorities cited by the United States to the effect that the instrument must be construed as promising to convey not merely the land but the timber, which, though constructively severed, was still growing on it, are without application here. They are merely to the effect that, though the sale of timber in Louisiana has the effect of creating two separate and distinct estates, one in the land and one in the timber,[2] and a sale by the land owner without reservation after having previously sold the timber will not carry title to the timber,[3] an owner of the land, who had previously conveyed the timber but had committed himself by contract to convey land and timber, may not demand specific performance of the contract,[4] and one who has conveyed land and timber by general warranty deed, will be held liable on his warranty.[5] No deed with warranty has been executed here. Here is no perfected contract of sale, clear and certain as to its intent and meaning and fair and reasonable on its face. Here is merely an option to convey, which, because the optionor did not have title to both land and timber, the government, electing to proceed instead by condemnation, declined to convert into a binding contract followed by a deed. I think, therefore, that for this additional reason the judgment must be

Affirmed.

WALLER, Circuit Judge (specially concurring).

If the Government is correct in its contention that option, or contract, bound the landowners to convey the timber on the land, which the landowners did not own, then the contract was unenforcible and the only recourse of the contracting purchaser was for damages for the breach of the contract of sale, or for a rescission of that contract. Eminent domain is not the remedy for the rescission of a contract nor for recovery of damages for its breach.

son, 151 U.S. 586, 14 S.Ct. 458, 38 L. Ed. 279; Matheson v. United States, 227 U.S. 540, 33 S.Ct. 355, 57 L.Ed. 631.

See the full and authoritative treatment of the matter in 5 C.J.S., Appeal and Error, under the subtitle, "Estoppel to Allege Error—Error Committed or Invited by Party Complaining" beginning on p. 173 with § 1501 and running through § 1516 on page 237.

[1] Bermuda Stock Farms Co. v. Gilliland Oil Co., 155 La. 949, 99 So. 708; McVay v. Swift, 5 Cir., 91 F.2d 208.

[2] Brown v. Hodge-Hunt Lbr. Co., 162 La. 635, 110 So. 886.

[3] Gray v. Edgar Lumber Co., 138 La. 906, 70 So. 877.

[4] Mower v. Richardson, 124 La. 130, 49 So. 1003.

[5] Woollums v. Hewitt, 142 La. 597, 77 So. 295; Young v. Sartor, 152 La. 1064, 95 So. 223; Cf. Bodcaw Lbr. Co. v. Clifton Heirs, 169 La. 759, 126 So. 52.