**THUNDERBIRD, LTD., a Florida limited partnership and Philip A. Browning, Jr., Individually and as General Partner of Thunderbird, Ltd., Plaintiffs–Appellants,**

v.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF JACKSONVILLE, a corporation, Heritage Federal Savings and Loan Association, a corporation, and Florida Federal Savings and Loan Association, a corporation, Defendants–Appellees.**

Nos. 88–3540, 88–3848.

United States Court of Appeals, Eleventh Circuit.

Aug. 9, 1990.

John L. Taylor, Jr., Otto F. Feil, III, Vincent, Chorey, Taylor & Feil, Atlanta, Ga., William J. Sheppard, Sheppard & White, Jacksonville, Fla., for plaintiffs-appellants.

David T. Henniger, John A. Yanchunis, Greene & Mastry, St. Petersburg, Fla., Michael J. Dewberry, K. Alexandra Krueger, Rogers, Towers, Bailey, Jones & Gay, Jacksonville, Fla., for defendant-appellee Florida Federal Sav. & Loan.

Before CLARK and EDMONDSON, Circuit Judges, and HILL, Senior Circuit Judge.

CLARK, Circuit Judge:

Purchasers of a resort hotel appeal from the district court's grant of summary judgment in favor of several savings and loan associations on the purchasers' claims of breach of a loan commitment agreement and of an agreement to participate in funding the loan, interference with contractual relations and civil conspiracy.

## I. BACKGROUND

Appellant Philip A. Browning, Jr., and his partner J. Steven Wilson entered into an agreement in 1978 with appellee First Federal Savings and Loan Association of Jacksonville (First Federal) for the sale by First Federal of the financially troubled Thunderbird Resort Hotel. The purchase and sale agreement included a commitment letter to Browning and Wilson pursuant to which First Federal would provide a twenty-five year mortgage loan, at an interest rate not to exceed 9.5% per annum, upon satisfaction of certain conditions contained in the commitment. The funds were to finance a $4.5 million renovation of the hotel. Browning and Wilson assigned their interest in the agreement to their partnership, appellant Thunderbird, Ltd. (Thunderbird). The loan commitment was effective from March 1, 1980 until February 28, 1983. In the interim, Thunderbird obtained short-term financing from Provident Bank of Cincinnati in a total amount of $4,900,-000, to fund the purchase of the hotel and the renovations. The purchasers planned to use the funding from the First Federal loan commitment to retire the Provident Bank debt.

First Federal also entered into an agreement with three other savings and loan associations, Florida Federal Savings and Loan Association (Florida Federal), Heritage Federal Savings and Loan Association (Heritage), and Fidelity Federal Savings and Loan Association of Jacksonville (Fidelity) (subsequently merged with First Federal), which were to participate in funding the loan. Each of these institutions had an equitable interest in the property prior to its sale to Browning and Wilson and consented to the sale.

In May 1980, appellants submitted financial statements to First Federal and called upon it to lend the money. First Federal

refused on the ground that Thunderbird had not fulfilled the conditions of the loan commitment agreement, required by ¶ 6 thereof, which provided:

> *FINANCIAL STATEMENTS AND NO MATERIAL ADVERSE CHANGE.* Lender shall be furnished with current income statements, balance sheets, and supporting data as to the Mortgagor and the business conducted on the Real Property, all prepared in accordance with generally accepted accounting principles. Such financial statements shall be prepared on an accrual basis and cover at least the preceding four (4) months period. Such statements shall show that both Mortgagor and the business conducted on the Real Property are solvent and free from the threat of immediate insolvency. More specifically and without limitation, the business conducted on the Real Property shall have *consistently over the preceding four (4) months period* generated sufficient income to pay when due all operating expenses, accruals, and other liabilities, with sufficient excess to service the debt herein contemplated.... (emphasis added).

The statements plaintiffs furnished included the following figures for income, before depreciation, generated by the real property:

| | |
|---|---|
| Dec. 1979 | $ 5,537 |
| Jan. 1980 | (28,253) |
| Feb. 1980 | 314 |
| Mar. 1980 | 40,467 |

In a letter dated May 28, 1980 from the Senior Vice President of First Federal, Harold Craft, to Wilson and Browning, Craft stated:

> Based upon the financial statements which you have furnished us, the mortgagor is not generating sufficient income to comply with the requirements of the commitment. Among other things, your financial statement makes no allowance for amortization of the principal portion of the loan contemplated by the commitment, and in addition, makes no allowance for interest and/or principal payments on other outstanding notes and liabilities payable in excess of the $4,500,000.00 subject mortgage. Moreover, we believe that generally accepted accounting principles would require that a reserve for bad debts be reflected for accounts receivable where income is being reported on an accrual basis.

Plaintiffs submitted additional statements to First Federal, which First Federal believed also did not satisfy the requirements of the commitment agreement. Record, Vol. 8, Tab 255, Affidavit of Harold Craft. First Federal took the position that ¶ 6 required a positive cash flow in each of the four months for which financial information was furnished and that, in any case, the mortgagor did not show it could service the debt.

Without the First Federal loan, and confronted with mounting debts, Thunderbird filed for protection under Chapter 11. The property was finally sold at foreclosure in December 1984.

Thunderbird filed a complaint in December 1982[1] in the bankruptcy court for the Middle District of Florida against First Federal, Heritage, and Florida Federal, alleging breach of the loan commitment by First Federal (Count I), entitlement to specific performance of the loan commitment agreement (Count II), breach of the participation agreement by defendants, to which plaintiff alleged it was a third-party beneficiary (Count III), intentional interference with plaintiff's contractual relationship with First Federal based on the loan commitment (Count IV), and civil conspiracy (Count V). Count II sought specific performance.

In February 1983, the case was transferred to the United States District Court for the Middle District of Florida. Browning was later added as a plaintiff. Defendants filed motions to dismiss, which the court denied except as to the claim of intentional interference against First Federal and as to a claim for damages to the general reputation of Thunderbird and its partners.

---

1. Thunderbird, Browning and Wilson had already filed suit against First Federal on June 30, 1980, in the Florida court. The state court case was apparently dismissed in 1982, Record, Vol. 20 at 60–61, but was later refiled, Vol. 21 at 17.

Between August 1986 and February 1988, all of the defendants filed motions and supplemental motions for summary judgment. The principal contention of defendants First Federal and Heritage was that plaintiffs failed to satisfy the requirement of paragraph 6 of the loan commitment agreement between Thunderbird and First Federal that the property "shall have consistently over the preceding four (4) months period generated sufficient income to pay [expenses when due and service the debt]." In a March 29, 1988 order ruling on the motions, the district court stated that "the term 'consistently' would appear to be unambiguous" in itself but was to be viewed in the context of the entire agreement. Paragraph 24 of the loan commitment, in particular, provides:

> Notwithstanding anything to the contrary contained herein Lender and Mortgagor understand and agree that the requirements of this commitment are modified so that Mortgagor shall only be required to provide those items *which are usual and customary in the trade for transactions similar to the one contemplated herein....* (emphasis added).

The district court's order of March 29, 1988, denying defendants' motion for summary judgment, reads in part as follows:

> Plaintiffs argue that this paragraph [24] lends credence to their argument that the "usual and customary" usage of the term "consistently" in the trade is that over the total period of four months the net income had to exceed the operating costs. Plaintiffs explain that the hotel business is seasonal, and the business operates on an average income cash flow. On good months, a hotel can take in enough cash to cover the predictable bad months. Therefore, Plaintiffs argue that this type of operating procedure is the usual and customary business approach.

> Plaintiffs' argument is well-taken. After reviewing all of the documents and affidavits filed herein, the Court finds that paragraph 6 is reasonably susceptible to more than one construction, and therefore, this issue must be submitted to the jury for resolution as a matter of fact. *Hoffman v. Terry,* 397 So.2d 1184 (Fla.Dist.Ct.App.1981). The motion for summary judgment filed by First Federal and Heritage on November 3, 1987 must be denied.

Florida Federal's motions for summary judgment on the claims of breach of a third-party beneficiary contract, intentional interference with the contractual relationship and conspiracy were also denied. The court denied as well a supplemental motion for summary judgment filed by First Federal and Heritage asserting that Thunderbird (i) made material misrepresentations in financial reports submitted to First Federal to support the request for funding [2] and (ii) did not satisfy ¶ 6, by failing to comply with generally accepted accounting principles in preparing financial statements and omitting management fee expenses from the statement which, if included, would have produced an aggregate loss.

The case proceeded to trial before a jury on June 13, 1988. On the morning of June 14, *plaintiffs* orally requested that the court reconsider its denial of defendants' motions for summary judgment, in light of the court's rulings made the day before on defendants' motions *in limine* regarding evidentiary matters. Plaintiffs contended that those rulings limited plaintiffs' ability to present evidence on the meaning of the term "consistently," which was the very issue of fact to be tried by the jury. Plaintiffs further contended that the court's statement, that the claims of conspiracy and interference with contract were likely to fail because defendants were parties to or had an interest in the contract, was inconsistent with the denial of summary judgment for defendants on those counts. Plaintiffs then requested

---

**2.** Paragraph 20 of the commitment agreement provided:

> We reserve the right to cancel this commitment in the event of any material misrepresentation made in any of the supporting data furnished.

that if it is the Court's intention to rule on these two seminal issues in this case, that it do so as a matter of summary judgment so that [plaintiffs] can get some sort of an adjudication, or an appeal on those two issues, because they are absolutely essential and seminal to the plaintiffs' case.

Record, Vol. 21 at 5.

As to the rulings on the motions *in limine*, plaintiffs urged the court "in the alternative ... instead of dealing with it as a matter of summary judgment" to consider certifying the issues to the Court of Appeals to obtain a ruling on the evidentiary questions which, according to plaintiffs, would "doubtless determine the outcome of this trial." *Id.* at 7.

Upon questioning by the court, plaintiffs admitted that they had no witnesses who would testify specifically that, according to the usage and custom in the trade of lending money on commercial real estate, "consistently" has a special meaning and the borrower need not show a profit *every* month. Accordingly, after dismissing as moot the count for specific performance because the property had been sold, the court entered judgment in favor of all defendants on all remaining counts. Plaintiffs appeal from that order as well as from

a separate order awarding costs to defendants.

## II. DISCUSSION

Appellants describe the essential error on appeal as follows:

Specifically, the question on appeal is whether the trial court was correct in ruling as a matter of law that the word "consistently" as used in the foregoing quotation [from ¶ 6] required that the Appellants show a "profit" in each and every month of the "preceding four (4) months period," despite evidence that such a reading is contrary to custom and usage in the motel trade.

Appellants' Brief at 1-2.

This is a mischaracterization of the court's ruling. We have previously quoted from the court's order of March 29 in which the court denied defendants' motion for summary judgment in the process of holding that plaintiffs could offer evidence of the usual and customary meaning of "consistently" in the banking trade.

On the morning the trial was to commence, the district court granted certain motions *in limine* which had been filed by the defendants on March 3, 1988, prior to entry of the denial of defendants' motion for summary judgment.[3] None of defen-

---

3. Defendants moved as follows:

[F]or the entry of an order, prior to trial of this cause, prohibiting references, offers of evidence, argument, or testimony or comment by any witness or attorney regarding:

1. The refusal of First Federal to agree to an assignment of the commitment to a potential purchaser in May, 1982, approximately two years after this lawsuit was originally filed in state court, on the grounds that the refusal has never been alleged as a breach of the commitment by First Federal or the participants the complaint in this action or in any complaint filed by the Plaintiffs.

2. Any evidence regarding the personal financial assets of Mr. Browning and Mr. Wilson as a means of satisfying the terms of paragraph 6 of the commitment, or removing excess debt, or explaining any departure from generally accepted accounting principles on the financial statements submitted to First Federal, or as any excuse for nonperformance of the conditions precedent in the commitment.

3. Any evidence regarding the obtaining, by subsequent owners of the Thunderbird Re-

sort Hotel, of a nationwide franchise with Quality Inn, Holiday Inn, or any other national franchisor.

4. Any claim for punitive damages, or any reference to the wealth or financial capacity of the Defendants, unless and until a sufficient evidentiary predicate has been established that would warrant the submission of punitive damages to the jury over a motion for directed verdict on such issues.

5. Any item of special damages not specifically pleaded in accordance with Rule 9(g), Fed.R.Civ.P., including but not limited to the items of unplead special damages identified in answers to interrogatories served February 18, 1988.

6. Any written or oral communication or statements, or conduct, between the parties or their attorneys after June 30, 1980 (the date the first state court complaint was filed), concerning alternative financing plans or similar comprise or settlement solutions.

7. Any written or oral communication between the parties to the December 2, 1977 purchase and sale agreement, the permanent loan commitment, and the addendum thereto,

dants' motions *in limine* seek to limit plaintiffs from offering evidence on the subject of the customary meaning of the word "consistently" as used in the context of Paragraph 6.[4] To the contrary, the district court held the opposite in the following colloquy before trial commenced:

It's my opinion that when you get rid of the—or separate the wheat from the chaff, or more appropriately, the lawyering from the facts—and here it constitutes the lawyering, most of which is running up fees and discovery matters and creating havoc for the magistrate, which this Court does not particularly appreciate—but when you get rid of all that lawyering, this case boils down to whether or not the plaintiffs were able to comply with Section 6, the four-month—consistent four-month statement—statements of operation. And it's this Court's opinion that that is unambiguous except as it may be modified by Section 24 or Paragraph 24 of the commitment with regard to usual and customary practices in the industry. If there is any such usual and customary practice which would identify or clarify or modify Section 6, *that testimony will be admitted,* but that is a rather specific requirement of the commitment, and the failure to meet that commitment would defeat the plaintiffs' claim.

Record, Vol. 20 at 9–10 (emphasis added).

The trial then commenced and the plaintiffs proceeded with one witness, John Steven Wilson, whose testimony was not completed before the evening recess. A review of Mr. Wilson's testimony indicates that he did not testify on the meaning of "consistently" as used in ¶ 6 of the commitment agreement.

On the second day of trial plaintiffs' counsel raised as an initial matter the court's rulings of the previous day on the motions *in limine.* Plaintiffs' counsel stated:

concerning the parties' intent or interpretation of the obligations of the parties, if offered to prove the meaning of the contract.

4. The only motion *in limine* relating to ¶ 6 is number 7, which seeks to exclude evidence of

It would appear to the plaintiffs that the court's ruling yesterday on the motion *in limine* reverses the court's ruling on the motion for summary judgment of March 29 when the court held that this term is unambiguous, and the court's evidentiary rulings and the limitations on counsel's ability to present evidence on this would appear to be inconsistent with the court's motion—ruling on the motion for summary judgment.

Record, Vol. 21 at 4–5. Plaintiffs' counsel then made its request for a reversal of the court's denial of defendants' motions for summary judgment. Plaintiffs' counsel explained:

Your Honor, in the first instance, it is my understanding from reading the court's order of March 29, 1988, in summary judgment wherein the court found that the paragraph 6 was ambiguous in the sense that, to use the court's terms, it is 'reasonably susceptible to more than one construction,' this court's ruling yesterday is inconsistent and indeed a reversal of that.

The court stated: "I agree." Record, Vol. 21 at 8.

Plaintiffs' counsel completely misconstrued the court's ruling on the motions *in limine,* however. In its ruling on the motions for summary judgment, the court stated:

Were this court to focus solely on paragraph 6 of the contract the term 'consistently' would appear to be unambiguous. However, this court must view the contract as a whole and must compare and construe all portions of the contract with reference to each other.

The court then discussed paragraph 24. The court accepted plaintiffs' argument that the usual and customary usage of the term "consistently" should be considered in construing paragraph 6. The court's statement in ruling on the motions *in limine* is entirely consistent with its summary judg-

any communication between the parties "concerning [their] intent or interpretation of the obligations of the parties, if offered to prove the meaning of the contract."

ment ruling. The court still believed that paragraph 6 of the agreement was unambiguous in isolation, but that it was to be modified by paragraph 24. Therefore, the court was willing to admit testimony of any usual and customary practice which would clarify the meaning of the precise language of paragraph 6. Counsel for defendants correctly characterized the situation:

> I really don't see any inconsistency between the court's ruling on the summary judgment. As I interpret your order on summary judgment with regard to the issue of 'consistently,' you were simply saying that it would require evidence that 'consistently' had some specific definition or usage in the trade. Otherwise, it was unambiguous and would be given its normal and customary definitional meaning. You offered the plaintiffs, therefore, the opportunity to prove what they argued to you in their motion—or in their opposition to our motion for summary judgment, that it did in fact have such a meaning and that paragraph 24 would take it out of it. So I personally don't see any inconsistency between the two rulings. I think the order that you entered yesterday on the motion *in limine* was simply a clarification of that issue.

> .    .    .    .    .

> I think that we can try this case any time evidence is excluded for whatever reason, whether on a motion *in limine* or whether its—the evidence is simply inadmissible. It could arguably be outcome determinative, but that wouldn't warrant you going to the Eleventh Circuit to complain after two days of trial about the trial you had. I think there is a better opportunity with a fuller record for the Eleventh Circuit to review those.

Record, Vol. 21 at 14–15.

In considering the request of plaintiffs' counsel to submit the issue to this Court, it is crystal clear to this court that the trial court gave plaintiffs the opportunity to present the type of evidence it deemed relevant and admissible, by posing the following question to plaintiffs' counsel:

> Now, do you have any testimony that—or do you anticipate having any testimony that the usage and custom in the trade, and that is the trade of lending money on commercial real estate, that the word consistently means something other than each month?

Counsel replied:

> Your Honor, I have a myriad of evidence that in the custom and trade of lending money and a borrower's ability to show compliance with requirements to show cash flow, that when a lender gives the borrower a specific period of time, be it four months, six months, twelve months, that the lender looks to the entirety of that period, whatever it is, and does not look to each and every month.

The colloquy continued:

> The Court: No, I'm not talking about that, Mr. Taylor. I'm talking about—and I think you might be right if the word consistently is not in there— your position is that you want to take that word out and leave it out completely, and to me it's in there and you can't leave it out.... *And what I'm asking you is, is whether, where the word consistently is used, you are going to have testimony that it doesn't mean what it says, in the custom and usage of the trade.*

> .    .    .    .    .

> Mr. Taylor: [M]*y witnesses' testimony doesn't seize on the word 'consistent.'* They seize on the concept of a lender saying you've got cash flow projections and you've got to meet them for some period of time....

Record, Vol. 21 at 25–27 (emphasis added). Thus, plaintiffs had no evidence of custom and usage in the industry relating specifically to the meaning of the word 'consistently' as used in paragraph 6.

Moreover, plaintiffs' counsel clearly sought a ruling in favor of defendants:

> Counsel: [I]t is my position then that should be dealt with as a matter of summary judgment....

> .    .    .    .    .

I would therefore urge the Court in the first instance to decide them as a matter of summary judgment.

Record, Vol. 21 at 8, 10.

From the bench, the court then stated that, "at the request of the plaintiff," it was granting summary judgment in favor of the defendants. One of the reasons the court gave for its ruling was that plaintiffs indicated to the court "that they have no witnesses who will come in here and say that the usage and custom of the industry is such that the word 'consistently' has some other meaning other than what its plain meaning would be." The court entered a written order on June 15, 1988 granting summary judgment for the defendants and dismissing the action.

Having invited the entry of summary judgment against themselves, appellants cannot now claim the trial court erred by taking the very action appellants urged upon it. Their claims on appeal are precluded from review under the principle of "invited error," which is "that range of conduct which may create error at trial but which compels appellate courts to affirm when the party inducing the error raises it on appeal." *Trawick v. Manhattan Life Ins. Co. of New York,* 484 F.2d 535, 539 (5th Cir.1973). Our predecessor court so held in *United States v. Wurtsbaugh,* 140 F.2d 534 (5th Cir.1944). There, the United States moved for and obtained in the trial court a directed verdict and judgment in a condemnation proceeding fixing the value of the condemned property. On appeal, the government sought reversal of the award because the amount exceeded the value of the property under certain option contracts. The Court rejected the government's objection and affirmed the judgment of the district court, on the ground that "the party complaining of the award requested that that exact award be made." *Id.* at 537.

This Court revisited the doctrine in *Crockett v. Uniroyal, Inc.,* 772 F.2d 1524 (11th Cir.1985). *Crockett* involved claims for personal injury and wrongful death caused by exposure to a poisonous pesticide while workers were cleaning rail cars that had transported the pesticide. Plain-

tiffs sued the shipper of the pesticide and the two rail carriers, and defendants filed cross-claims for indemnity or contribution. At a pretrial conference, plaintiffs' counsel admitted that plaintiffs could not prove negligence of one of the carriers, Southern; the district court dismissed Southern as a defendant to plaintiffs' complaint. The district court also granted summary judgment in favor of the carrier and against the shipper on its claim for contribution or indemnity. On appeal, the Court stated that the issue of Southern's liability to plaintiffs was already disposed of on the merits:

> Indeed, the plaintiffs' admission of inability to pursue a claim against Southern prevents the plaintiffs from appealing that issue, it being a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party.

*Id.* at 1530 n. 4. *See generally* 5 C.J.S. § 1501 (1958 and Supp.1989); *see also Equal Employment Opportunity Commission v. Mike Smith Pontiac GMC, Inc.,* 896 F.2d 524, 528 (11th Cir.1990) ("even if the trial court did employ the incorrect standard in determining whether to set aside the default, we will not reverse its decision because [cross-appellant] invited the error"), *Int'l Travelers Cheque Co. v. Bankamerica Corp.,* 660 F.2d 215, 224 (7th Cir.1981) (appellant could not complain of error where district court dismissed suit based on appellant's concession regarding an indispensable party, because "any error was of [appellant's] own making"), *Lindquist v. Friedman's, Inc.,* 366 Ill. 232, 8 N.E.2d 625, 628 (1937) (a party cannot demand that the court instruct the jury on the subject of punitive damages and then be heard to complain that the court had no right to comply with the request), and *Braden v. State,* 108 S.W.2d 314, 316 (Tex.Civ. App.1937) ("counsel for appellants invited, and in fact pressed, the court to enter the very judgment that was entered ... [and] is estopped to assert that the action of the court is erroneous, even though there has been an attempt to reserve the right to appeal").

Appellants, therefore, may not complain on appeal of the alleged error they themselves induced or invited; nor do we find any manifest error that would lead us to deviate from this principle. Accordingly, the judgment of the district court on all counts in favor of defendants is affirmed.[5]

The order awarding costs to appellees is also affirmed. The trial court taxed costs against plaintiffs in a total amount of $20,-804.22. Appellants object to the award of certain expenses included in that amount. We cannot find that the district court abused its discretion in awarding costs and we decline to review the amount awarded by the court. *United States v. Mitchell*, 580 F.2d 789, 793–94 (5th Cir.1978).

Appellants' motion to supplement the record is denied, *see* F.R.A.P. 10(e), and appellees' motion to strike portions of appellants' initial brief is granted with respect to the quotes from depositions that are not part of the record.

AFFIRMED.

5. The other issues raised by appellants are meritless and require no discussion.