**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Cecil L. BURSON, Defendant–Appellant.**

No. 90–2162.

United States Court of Appeals, Tenth Circuit.

Dec. 20, 1991.

Robert J. Gorence, Asst. U.S. Atty. (Don J. Svet, U.S. Atty. and David N. Williams, Asst. U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Jill M. Wichlens, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the briefs), Denver, Colo., for defendant-appellant.

Before LOGAN and BRORBY, Circuit Judges, and CARRIGAN,* District Judge.

BRORBY, Circuit Judge.

Mr. Burson was convicted of attempting to evade the payment of income taxes in violation of 26 U.S.C. § 7201.[1] Mr. Burson, who represented himself at trial, raises three issues on appeal: (1) did he voluntarily waive his right to counsel; (2) did the trial court err in the admission of evidence; and (3) was the fine imposed excessive?

A summary of the evidence reveals a sizeable Tax Court judgment against Mr. Burson in 1982 for tax deficiencies for the years 1976 through 1979. Thereafter Mr. Burson conveyed both his real and personal property to various entities that had no business licenses and none of which had been registered as required by New Mexico law. All of these entities used either Mr. Burson's post office box or a post office box registered to an individual named Frank Pina as a mailing address. One tax sale of Mr. Burson's realty was defeated when Frank Pina produced a quitclaim deed from Mr. Burson to one of the unregistered entities. The one count indictment covered the years 1982 through 1986. From 1982 through 1986 Mr. Burson, who was working as a welder, had the checks in payment of his services issued to an entity that also used Mr. Burson's post office box as its mailing address. The evidence estab-lished Mr. Burson controlled and spent these monies. Mr. Burson did not file any federal income tax returns for the period in question.

I

## Voluntary Waiver of Counsel

Following the indictment, the trial court spent seven months sparring with Mr. Burson in an effort to force Mr. Burson into a decision concerning counsel. Detailing these occurrences would serve little purpose. A Federal Public Defender was appointed and withdrew. The trial court then appointed Mr. Plotsky to represent Mr. Burson, despite Mr. Burson's refusal to reveal any financial information concerning his property or income. Mr. Burson did not wish the services of Mr. Plotsky, due primarily to the fact that Mr. Plotsky would not file various motions prepared by Mr. Burson and failed to follow the defense strategy desired by Mr. Burson. Mr. Plotsky moved to withdraw, and the trial court denied this motion. Mr. Burson subsequently represented to the trial court he had retained counsel on two separate occasions. The trial court conducted five hearings concerning counsel, and each hearing involved a continuance of the trial setting. Finally, the trial court decided the case would go to trial and delivered an ultimatum to Mr. Burson: You are going to trial—you may utilize appointed counsel; you may retain counsel; or you may represent yourself. As none of these alternatives was agreeable to Mr. Burson, the trial court concluded Mr. Burson would represent himself with appointed counsel, Mr. Plotsky, as standby counsel.

As the trial court repeatedly and correctly advised Mr. Burson of the hazards of self-representation, Mr. Burson correctly concedes his waiver of counsel was knowingly and intelligently accomplished. Mr. Burson asserts his waiver of counsel was not voluntary.

---

* The Honorable Jim R. Carrigan, United States District Judge for the District of Colorado, sitting by designation.

1. "Any person who willfully attempts in any manner to evade or defeat any tax imposed ... or the payment thereof shall, ... be guilty of a felony...." 26 U.S.C. § 7201.

■ Our review of the voluntariness of defendant's waiver of counsel is de novo. *United States v. Silkwood*, 893 F.2d 245, 248 (10th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2593, 110 L.Ed.2d 274 (1990). "When a defendant is given a clear choice between waiver of counsel and another course of action, such as retaining present counsel, the choice is voluntary as long as it is not constitutionally offensive." *United States v. Padilla*, 819 F.2d 952, 955 (10th Cir.1987) (citing *Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir.1976)). "The question of voluntariness therefore turns on whether defendant's objections to present counsel are such that he has a right to new counsel." *Id.* It is the defendant's obligation to make this showing. *Id.*

■ Following the five hearings relating to counsel and the trial court's ultimatum, the following exchange occurred:

THE COURT: ... I will suggest that you reconsider permitting Mr. Plotsky to represent you.

MR. BURSON: Your Honor, Mr. Plotsky would be fine; but he's already admitted to me ... he didn't understand the law in my case, Your Honor. And I am requesting competent, effective counsel that does understand the law in my case.

THE COURT: What is Mr. Burson speaking about, Mr. Plotsky?

MR. PLOTSKY: I don't know, Your Honor.

THE COURT: Mr. Plotsky, do you feel competent to represent him in connection with the charges that are pending before him?

MR. PLOTSKY: I certainly do, Your Honor. I'm bound by the rules of ethics.

The trial court subsequently found Mr. Plotsky to be competent.

Mr. Burson, tacitly conceding Mr. Plotsky's competence, asserts the trial court did not conduct a sufficient inquiry into Mr. Burson's assertion of ineffective representation. In other words, Mr. Burson contends the trial court failed to conduct an inquiry into appointed counsel's effectiveness.

The record on appeal contains no showing whatsoever that Mr. Plotsky was incompetent, unprepared, or ineffective and in fact reveals counsel was exceptionally competent. The trial court made formal inquiry into Mr. Burson's reasons for dissatisfaction with Mr. Plotsky. The only evidence shows Mr. Burson wanted counsel who was "competent and effective." The trial court specifically addressed Mr. Burson's concerns and specifically found Mr. Plotsky competent, a finding Mr. Burson does not challenge. Mr. Burson's argument that an insufficient inquiry was conducted to determine Mr. Plotsky's effectiveness is semantic. A finding of trial counsel's competency necessarily carries with it a finding of effectiveness. We note for Mr. Burson's benefit that effective counsel does not necessarily guarantee adherence to any strategy proposed by the defendant.

Mr. Burson failed to show good cause for dissatisfaction with appointed counsel. The record clearly reveals Mr. Burson (who had twice represented himself in Tax Court) was merely attempting to manipulate the judicial system. We hold Mr. Burson's waiver of counsel was voluntary as he wholly failed to show that he had a right to new counsel and failed to make any showing concerning his appointed counsel's ability, knowledge, experience, or competency. The record amply demonstrates appointed counsel's competency and effectiveness.

II

Evidentiary Errors

■ Mr. Burson raises several asserted evidentiary errors and claims the cumulative effect of these errors was so prejudicial as to warrant reversal. Prior to discussing these assertions, we note no objections were made concerning these matters during trial, and our review thereof is necessarily for plain error only. Plain error is " 'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' " *United States v. Gallup*, 812 F.2d 1271, 1278 (10th Cir.1987) (quoting *United States v. Coppola*, 486 F.2d 882, 884 (10th Cir.

1973), *cert. denied,* 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974)) (emphasis omitted). If we find a violation of Mr. Burson's constitutional rights, the conviction can stand only if we are satisfied beyond a reasonable doubt the error was harmless. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

## A. *Pre-Arrest silence:*

Mr. Burson contends the prosecution introduced evidence of his pre-arrest silence as substantive evidence of his guilt thereby violating his Fifth Amendment right against self-incrimination.

Mr. Burson points to the following evidence to support his claim. The record reveals the prosecution, during its case in chief, called two I.R.S. criminal investigators who gave essentially identical testimony. The gist of this testimony was that they went to Mr. Burson's residence and told him they would like to talk to him in connection with an investigation of Mr. Frank Pina. Specifically, the criminal investigators said they wished to find out the extent of Mr. Burson's knowledge about Mr. Pina and whether Mr. Burson might have had any financial transactions with Mr. Pina. Mr. Burson indicated he was too busy, and an appointment was made for two days later.

On the appointed day, which was about two and one-half years prior to Mr. Burson's indictment, the two agents again arrived at Mr. Burson's residence where they were met by Mr. Burson carrying a tape recorder. Mr. Burson began interrogating the agents concerning their armament and authority, and the agents decided to terminate the conversation and leave as they felt "it was apparent that he would not cooperate or answer any of [their] questions."

The prosecutor then asked both agents if Mr. Burson had ever responded to the agents' questions concerning "his tax affairs or Mr. Pena's [sic] tax affairs," to which each agent replied "No." It is this specific testimony to which Mr. Burson now objects.

We cast the issue before us in terms of whether the testimony of the two criminal investigators constituted an impermissible comment on Mr. Burson's constitutional right to remain silent. *See United States v. McKinnell,* 888 F.2d 669, 676 (10th Cir. 1989). The challenged evidence at issue in this case came in through the testimony of the two criminal investigators. It came before the jury through the efforts of the prosecution. The challenged testimony was not what the defendant said; rather, it was what he did not say. It is for these reasons we rephrase the issue as whether the agents' testimony constituted an impermissible comment on Mr. Burson's constitutional right to remain silent.

■ We commence our analysis by reviewing applicable Fifth Amendment principles. The invocation of the privilege against self-incrimination must be given a liberal construction. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). The invocation of the privilege against self-incrimination does not require any special combination of words. *Quinn v. United States,* 349 U.S. 155, 162, 75 S.Ct. 668, 673, 99 L.Ed. 964 (1955). The privilege against self-incrimination can be asserted in any investigatory or adjudicatory proceeding. *Kastigar v. United States,* 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972).

■ Applying these basic legal principles, we have little trouble in concluding Mr. Burson invoked his privilege against self-incrimination. Mr. Burson's silence was exhibited in a non-custodial interrogation by two criminal investigators during the regular course of a criminal investigation. While the record is silent as to whether Mr. Burson was a suspect, it is clear the investigators wished to ask Mr. Burson about his financial and property transactions that involved Mr. Pina and that Mr. Burson knew he was being interrogated as a part of a criminal investigation. It is clear from the agents' testimony Mr. Burson "did not want to be questioned" and would not answer any of the agents' questions. Whether Mr. Burson was advised of his privilege against self-

incrimination is immaterial. What is important is that Mr. Burson clearly was not going to answer any of the agents' questions.

■ The general rule of law is that once a defendant invokes his right to remain silent, it is impermissible for the prosecution to refer to any Fifth Amendment rights which defendant exercised. *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). To be sure, exceptions exist to this rule, such as the use of silence for impeachment in certain circumstances, but such exceptions have no applicability to the case before us. We therefore conclude the admission into evidence of the agents' testimony concerning Mr. Burson's silence was plain error.

This does not end our analysis. We must still undertake our harmless error analysis. *Chapman* dictates the beneficiary of a constitutional error must prove beyond a reasonable doubt the error complained of did not contribute to the guilty verdict. In *United States v. Massey*, 687 F.2d 1348 (10th Cir.1982), we set forth five factors as relevant inquiries to be used in determining whether comment concerning the defendant's silence is harmless. These factors include:

"1. The use to which the prosecution puts the ... silence.

"2. Who elected to pursue the line of questioning.

"3. The quantum of other evidence indicative of guilt.

"4. The intensity and frequency of the reference.

"5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions."

*Id.* at 1353 (quoting *Williams v. Zahradnick*, 632 F.2d 353, 361–62 (4th Cir.1980)).

■ Our review of these factors makes it clear beyond a reasonable doubt the jury would have returned a guilty verdict regardless; thus, the prosecution's impermissible reference to Mr. Burson's silence did not contribute to the guilty verdict. The only reference to Mr. Burson's silence was that described in the questions by the agents. We think it is also important to note that neither of the agents testified as to any of the questions they may have propounded to Mr. Burson. The prosecution made no reference to Mr. Burson's silence in closing argument or otherwise. The purpose of offering the evidence was to establish a relationship between Mr. Burson and Mr. Pina. Subsequent evidence showed Mr. Pina did Mr. Burson's paperwork and showed up at an I.R.S. tax sale of Mr. Burson's real property bearing a quitclaim deed from Mr. Burson to one of his fictitious entities for the purpose of cancelling the tax sale. The quantum of evidence establishing Mr. Burson's guilt is overwhelming. In addition to conveying all of his property to fictitious entities, Mr. Burson utilized the services of his then girl friend to pay his bills. Mr. Burson would cash his paycheck and then give cash to his girl friend who, in turn, deposited the cash into her checking account and paid Mr. Burson's bills. In fact, the record contains not a shred of evidence that could arguably be advanced as supporting his innocence. Mr. Burson offered no evidence, no cross examination, and no final argument. The closest argument offered as a defense was Mr. Burson's oft repeated statement that he did not understand the indictment. The reference to Mr. Burson's silence was related by the witnesses as an afterthought and as a part of a larger story evidencing the cancellation of the tax sale of a parcel of Mr. Burson's real property. The record evidences a sincere and active concern by the trial court to protect Mr. Burson. The record contains numerous warnings by the trial court to the prosecution to stay away from certain evidence that would demonstrate Mr. Burson's tax protestor activities. Had any type of objection been made, it is quite clear the trial court could and would have taken appropriate action to avoid any possible error. The evidence of Mr. Burson's silence had little probative value. While the agents testified Mr. Burson did not answer their questions concerning his financial affairs or dealings with Mr. Pina, no evidence existed showing what the questions were or their relevance to the case.

We are convinced beyond reasonable doubt the error was harmless.

Mr. Burson argues the trial court should have excluded the pre-arrest silence as it failed to weigh its probative value against its potential for prejudice as required by Fed.R.Evid. 403. Assuming without deciding this to be plain error and applying the same factors, we conclude it was harmless error beyond a reasonable doubt.

B. *Hearsay:*

Mr. Burson asserts several items of evidence were inadmissible hearsay evidence and thus their admission constituted plain error. We disagree.

▬ The evidence shows that in 1983 the I.R.S. levied on a piece of real property, scheduled a sale of this property, and published a notice of the tax sale, and that on the day of the sale Mr. Pina came to the I.R.S. bearing a quitclaim deed from Mr. Burson to one of Mr. Burson's unregistered entities that used the same post office box as rented by Mr. Burson. Mr. Burson's contentions warrant little discussion. The government properly laid a foundation showing the newspaper advertisement of the tax sale and the post office box rental receipt were both proper business record exceptions to the hearsay rule. The quitclaim deed was recorded and, as such, fell into the public record exception. The testimony of Mr. Chavez, who was the I.R.S. supervisor who made the decision to sell the property and approved the decision to cancel the sale, was based on personal knowledge and therefore was not hearsay. Similarly, Agent Roybal, an I.R.S. investigator present in the office when Mr. Pina brought in the quitclaim deed, testified as to his personal knowledge and, as such, his testimony was not hearsay either. Clearly the exhibits and the testimony were proper evidence not barred by the hearsay rule and should have been admitted.

C. *Evidence that Mr. Pina was under indictment:*

▬ One of the I.R.S. agents who had testified about his earlier meetings with

Mr. Burson also testified Mr. Pina was under indictment for income tax evasion. Mr. Burson asserts allowing this response constituted plain error. Mr. Burson argues the "relevance requirements of [Fed. R.Evid.] 402 and 404(b) cannot be met by evidence of the bad acts of a defendant's associates."

Certainly the information that Mr. Pina was under indictment was of minimal probative value. This evidence does, however, show the I.R.S. agents went to Mr. Burson's residence for a legitimate investigation purpose and not merely to trick Mr. Burson into making an incriminating statement. The evidence, even though of limited probative value, was relevant. This isolated reference to Mr. Pina's indictment was not fundamental or plain error.

Having reviewed Mr. Burson's claims of evidentiary error, both singularly and collectively, we hold they fail to rise to the level of reversible error.

## III

### The Fine

▬ At sentencing, the trial court placed Mr. Burson on probation and imposed a fine of $30,000 against Mr. Burson to be paid within one year from the date of the judgment. As Mr. Burson did not object to the fine at sentencing, we will review only for plain error. This case is not governed by the Sentencing Guidelines but is controlled by 18 U.S.C. § 3622(a)(3).[2] Mr. Burson contends the trial court failed to comply with the mandatory language of this statute because no evidence exists in the record to support a finding that Mr. Burson is capable of paying the fine in one year.

Mr. Burson is mistaken in his contention. The trial court heard the testimony concerning the amount of money Mr. Burson had received during the years identified in the indictment. This evidence showed Mr. Burson earned a minimum of nearly $100,-000 during this time period and was pos-

---

**2.** This statute was repealed effective November 1, 1987. It provided the district court shall consider, among other factors, the defendant's income, his earning capacity, and his financial resources.

sessed of substantial real and personal property including several motor vehicles, a mobile home, a motorcycle, and a recreational vehicle. The record further reveals Mr. Burson steadfastly refused to furnish any information to the court concerning his financial status and received appointed counsel notwithstanding.

Although a sentencing court is required to consider the statutory factors, it is not required to make either written or oral findings concerning its resolution of these factors. *United States v. Weir*, 861 F.2d 542, 545 (9th Cir.), *cert. denied*, 489 U.S. 1089, 109 S.Ct. 1555, 103 L.Ed.2d 858 (1988); *United States v. Condon*, 816 F.2d 434, 436 (8th Cir.1987). The trial court had before it the minimum amount of income earned during the years covered by the indictment, knew the extent and nature of Mr. Burson's real and personal property, and knew Mr. Burson was capable of following his trade as a welder and thus had a substantial earning capacity. When Mr. Burson refused to reveal any financial information, the sentencing court had before it as much evidence as was reasonably possible to obtain. If Mr. Burson felt the sentencing court had inadequate information to properly consider the amount of fine, he could and should have provided such information, but he refused to do so. This type of conduct is covered by the Invited Error Doctrine, which prevents a party who induces an erroneous ruling from being able to have it set aside on appeal. *See Fryman v. Federal Crop Ins. Corp.*, 936 F.2d 244, 249 (6th Cir.1991). *Accord United States v. Schaff*, 948 F.2d 501, 506 (9th Cir.1991); *Thunderbird, Ltd. v. First Fed. Sav. & Loan Ass'n*, 908 F.2d 787, 794 (11th Cir.1990). Mr. Burson is much like the son who killed his parents and then asked the sentencing court for mercy as he was an orphan. Mr. Burson's contentions concerning his fine contain no merit.

The judgment of the district court is AFFIRMED.