**Billy H. SANDERS, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 83–7375.

United States Court of Appeals, Eleventh Circuit.

Aug. 31, 1984.

Kaufman, Rothfeder, Mancuso & Blitz, Jo Karen Parr, Montgomery, Ala., for plaintiff-appellant.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Section, Richard Farber, Terry L. Fredricks, Tax Division, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

The plaintiff, Billy H. Sanders, filed suit to recover income taxes that he alleged were wrongfully collected by the United States for the years 1974 and 1975. Each party filed motions for summary judgment before the district court, and the court granted summary judgment for the United States, 564 F.Supp. 70. Sanders now appeals, contending for the first time that the issues involved are factual issues, not legal questions, and thus are inappropriate for summary judgment disposition. The plaintiff further argues that even if summary judgment disposition was allowable, the court erred in granting the United States' motion. Because we find that the district court did not err in its holdings, we affirm.

## I.

The relevant facts are undisputed. In 1950, Sanders and his sister purchased a 320 acre farm which previously had been leased to their father on a sharecropper basis. In the early 1950's, Sanders and his sister sold an 80 acre tract to an adjoining landowner, and in 1955 Sanders acquired full interest in the remaining acreage from his sister. Sanders' father continued farming the land from the time Sanders and his sister purchased the farm until the early 1960's when the father became physically disabled.

Beginning in 1967, Sanders began to subdivide the farm property in an effort to liquidate economically unproductive portions of the farm, and, as he told the district court, "[to] figure out something else to get into." During this period, Sanders' health was failing and his used car business was going through difficult times.

Sanders' initial subdivision, Paige Hills Estate, consisted of 54 acres subdivided at a cost of $3,500 into 98 lots. Water service and paved streets were put in at a cost of approximately $55,000, with gas and power lines installed at no cost. The lots sold slowly at first, with Sanders selling only eight lots in 1968, two lots in 1969, and none in 1970. In 1971, however, an Interstate was built nearby and the number of lots sold increased, with Sanders selling seventeen lots in 1971, thirteen lots in 1972, eighteen lots in 1973, seventeen lots in 1974, and twenty-one lots in 1975. These lots were sold under various arrangements: some were sold directly to builders, while others with houses already built upon them were sold through brokers. Although Sanders himself engaged in only limited advertising, the brokers who sold the lots in return for a commission from Sanders advertised extensively. By the end of 1976, Sanders had sold all but one of the lots and he began development of a new subdivision.

On his 1974 and 1975 income tax returns, Sanders characterized the profits derived

from sales of the lots without houses as capital gains rather than ordinary income. The Internal Revenue Service in 1977 disallowed the capital gains treatment and assessed additional income taxes, which Sanders then paid. Following an administrative review, the IRS rejected Sanders' claim for a refund. Sanders then filed amended tax returns (Forms 1040X) for 1974 and 1975, restating his claim for a refund. After the IRS refused reconsideration of his claim, Sanders filed this suit.

## II.

The appellant first argues that the district court erred in granting summary judgment because the main issue involved—whether the property was "primarily held for sale to customers in the ordinary course of [the taxpayer's] trade or business" (26 U.S.C. § 1221)—is a question of fact, not law, and thus presents a genuine factual dispute precluding summary judgment disposition. Fed.R.Civ.P. 56. In support, he relies on a recent case by the new Fifth Circuit, *Byram v. United States*, 705 F.2d 1418 (5th Cir.1983), which concluded that a taxpayer's purpose for holding property is a question of fact requiring a "clearly erroneous" standard of appellate review under Fed.R.Civ.P. 52(a).

This circuit's case law, as with other circuits, is not entirely consistent in determining whether a taxpayer's holding purpose is a factual question, a legal question, or a mixed question of law and fact. *Compare Houston Endowment, Inc. v. United States*, 606 F.2d 77, 83 (5th Cir.1979) (legal issue) *with United States v. Burket*, 402 F.2d 426, 429 (5th Cir.1968) (question is factual).[1] *See also Byram*, 705 F.2d at 1421 nn. 4 & 5 (discussing old Fifth Circuit and other circuits' cases). The district court in this case, relying on the former Fifth Circuit decisions in *Houston Endowment* and *Biedenharn Realty Co. v. United States*, 526 F.2d 409, 416 & n. 25 (5th Cir.) (en banc), *cert. denied*, 429 U.S. 819,

97 S.Ct. 64, 50 L.Ed.2d 79 (1976), concluded that the issue of whether Sanders' profits were capital gains or ordinary income was a legal issue to be determined by the court based on the undisputed facts of the case. In so concluding, the court observed that neither side had objected to summary judgment resolution of the issues. Indeed, the record shows that both parties pursued summary judgment motions, with the appellant's motion stating "that there is no genuine issue as to any material fact and ... he is entitled to judgment as matter of law."

As a general rule, an appellate court will not consider an issue raised for the first time on appeal unless failure to do so would result in a miscarriage of justice. *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Hill York Corp. v. American International Franchises, Inc.*, 448 F.2d 680, 690 (5th Cir.1971). Here, in light of the appellant's urging of summary judgment resolution below, we find that no injustice will result by declining to decide on this appeal whether this circuit should adopt *Byram*'s holding and apply it to the summary judgment context. Therefore, because of the complexity of the question involved, *Singleton*, 96 S.Ct. at 2877, and the appellant's contrary position before the district court, we decline to decide the issue for the first time on this appeal. *Guerra v. Manchester Terminal Corp.*, 498 F.2d 641, 658 (5th Cir. 1974).

## III.

The district court in determining whether Sanders' profits constituted capital gains under section 1221 properly recognized the need for answers to three questions:

1. Was taxpayer engaged in a trade or business, and, if so, what business?

2. Was taxpayer holding the property primarily for sale in that business?

---

**1.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

3. Were the sales contemplated by taxpayer "ordinary" in the course of that business?

*Suburban Realty Co. v. United States,* 615 F.2d 171, 178 (5th Cir.), *cert. denied,* 449 U.S. 920, 101 S.Ct. 318, 66 L.Ed.2d 147 (1980). The court also properly identified the seven factors outlined in *United States v. Winthrop,* 417 F.2d 905 (5th Cir.1969), that a court is to consider:

(1) the nature and purpose of the acquisition of the property and the duration of the ownership; (2) the extent and nature of the taxpayer's efforts to sell the property; (3) the number, extent, continuity and substantiality of the sales; (4) the extent of subdividing, developing, and advertising to increase sales; (5) the use of a business office for the sale of the property; (6) the character and degree of supervision or control exercised by the taxpayer over any representative selling the property; and (7) the time and effort the taxpayer habitually devoted to the sales.

417 F.2d at 910.

After reviewing the undisputed facts, we agree with the district court that the profits from the years 1974 and 1975 are properly characterized as ordinary income. The evidence showed that the appellant had engaged over a substantial period of time in the real estate business of subdividing land, making improvements, and then selling the lots. Merely because the appellant himself did not actively advertise or sell directly to the home buyers does not mean he was not engaged in the real estate business. A taxpayer can still be engaged in the real estate business if the bulk of his sales are to builders who then construct the houses and sell the lots. *See, Suburban Realty,* 615 F.2d at 181–82.

Likewise, the district court properly concluded that the evidence demonstrated that Sanders held the land used for the subdivision primarily for sale in his real estate business. He not only made improvements to enhance the marketability of the lots, but the evidence shows that such efforts were successful and resulted in frequent and substantial sales during the period in question. *See Suburban Realty,* 615 F.2d at 178 (frequency and substantiality of sales "highly probative" on holding purpose); *Biedenharn Realty Co.,* 526 F.2d at 416. The court also correctly noted that although Sanders' original purpose in acquiring the land was not to establish a real estate business, it was the taxpayer's intent at the time of the sales that is relevant for an inquiry as to whether capital gains treatment is justified. *See Suburban,* 615 F.2d at 183–84.

Finally, the district court correctly determined that Sanders' sales were contemplated as "ordinary" in the course of his business. The continuous and frequent sales of the lots over the period from 1972 to 1976 contradict any claim that the sales were the result of "an abnormal or unexpected event" such that the sales were not "ordinary." *See Suburban Realty,* 615 F.2d at 185–86. The lower court thus properly concluded that under the general provisions of section 1221 the profits from the sales of the lots were to be treated as ordinary income and did not err in granting summary judgment for the Government on this issue.

### IV.

The taxpayer next argues that the profits qualify for capital gains treatment under section 1237 of the Internal Revenue Code, which allows a taxpayer to treat profits from the sale of subdivided lots as capital gains if certain requirements are met.[2] The lower court did not reach the

---

**2.** Section 1237(a) provides generally:

(a) Any lot or parcel which is part of a tract of real property in the lands of a taxpayer other than a corporation shall not be deemed to be held primarily for sale to customers in the ordinary course of trade or business at the time of sale solely because of the taxpayer having subdivided such tract for purposes of sale or because of any activity incident to such subdivision or sale, if—

(1) such tract, or any lot or parcel thereof, had not previously been held by such taxpayer primarily for sale to customers in the ordinary course of trade or business (unless such

merits of this alternative contention because it found itself without jurisdiction to entertain the claim.

As the district court noted, 26 U.S.C. § 7422(a) mandates that:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary ... according to the provisions of law in that regard, and the regulations of the Secretary ... established in pursuance thereof.

Accordingly, Treasury Regulation 301.-6402–2(b)(1) requires that a "claim must set forth in detail each ground upon which a ... refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.... A claim which does not comply with this paragraph will not be considered for any purpose as a claim for a refund or credit."

The first and only mention of section 1237 by the taxpayer was in the amended tax forms that he filed in 1979. In the last paragraph of these forms he stated:

In the alternative taxpayer is entitled to treat the gain as a long term capital gain in accordance with section 1237 of the Code. Such property had been held by taxpayer for over ten years.

The court held that the facts stated in this paragraph were insufficient to place the Commissioner on notice that the sale of the lots met all of the requirements of section 1237. Specifically, the court found that the

taxpayer did not allege one of the essential requirements of section 1237—that substantial improvements had not been made to the lots and had not substantially enhanced the value of the lots—until the present lawsuit.

The taxpayer's failure to detail his claim, therefore, not only justified the IRS's denial of the claim at its face value, but also failed to satisfy the Treasury Regulation's requirement that he state the exact basis of his claim so that the Commissioner was "not ... left to his own devices in order to discover the precise nature of [the] taxpayer's claim...." *Stoller v. United States,* 444 F.2d 1391, 1393 (5th Cir.1971). Indeed, the district court noted that Sanders' failure to allege precisely the basis of his 1237 claim had resulted in a dispute over the nature of the improvements made upon the land arising for the first time in this lawsuit. Thus one of the purposes of the Treasury Regulation, allowing the IRS to resolve disputes in the first instance without litigation, *Carmack v. Scofield,* 201 F.2d 360, 362 (5th Cir.1953), would have been frustrated if the district court had exercised jurisdiction over the taxpayer's section 1237 claim.

## V.

For the foregoing reasons, the district court's order granting summary judgment to the defendant is AFFIRMED.

tract at such previous time would have been covered by this section) and, in the same taxable year in which the sale occurs, such taxpayer does not so hold any other real property; and

(2) no substantial improvement that substantially enhances the value of the lot or parcel sold is made by the taxpayer on such tract while held by the taxpayer or is made pursuant to a contract of sale entered into between the taxpayer and the buyer. For purposes of this paragraph, an improvement shall be deemed to be made by the taxpayer if such improvement was made by—

(A) the taxpayer or members of his family (as defined in section 267(c)(4)), by a corpora-

tion controlled by the taxpayer, or by a partnership which included the taxpayer as a partner; or

(B) a lessee, but only if the improvement constitutes income to the taxpayer; or

(C) Federal, State, or local government, or political subdivision thereof, but only if the improvement constitutes an addition to basis for the taxpayer; and

(3) such lot or parcel, except in the case of real property acquired by inheritance or devise, is held by the taxpayer for a period of five years.