The **CHARTER COMPANY**,
Plaintiff–Appellant,

v.

**UNITED STATES of America**,
Defendant–Appellee.

No. 91–3907.

United States Court of Appeals,
Eleventh Circuit.

Sept. 15, 1992.

*Dulude v. Cigna Sec., Inc.*, No. 90–CV–72191– DT (E.D.Mich. May 14, 1992).

Waddell A. Wallace, III, Jacksonville, Fla., for plaintiff-appellant.

Ralph J. Lee, Asst. U.S. Atty., Jacksonville, Fla., Gary R. Allen, Tax Div., Dept. of Justice, Teresa Milton, Michael Paup, Jonathan S. Cohen, Washington, D.C., for defendant-appellee.

Before BIRCH, Circuit Judge, JOHNSON *, and BOWNES **, Senior Circuit Judges.

BIRCH, Circuit Judge:

This tax case involves a dispute between appellant, the Charter Company ("Charter"), and the United States over Charter's tax liability for 1971 and 1972. After trial, the district court awarded Charter a refund for overpayment of taxes but held that the government could offset that refund because Charter's 1971–1972 depreciation deductions had been impermissibly large. On this appeal, Charter raises two issues. First, Charter contends that the district court committed error in ruling that Charter could not litigate certain issues that Charter failed to include in its refund claim. Second, Charter argues that even if the district court correctly decided that the omitted issues could not form the basis of an independent refund claim, the issues could still benefit Charter by functioning as an offset to the government's offset. We reject Charter's first argument and accept the second. Accordingly, we VACATE the district court's judgment and REMAND for further proceedings.

## I.

### A.

In January 1971, Charter acquired significant assets from Signal Oil & Gas Company ("Signal"). Charter's purchase included an oil refinery complex in Houston (the "Houston Refinery"), as well as certain marketing facilities that sold the Houston Refinery's petroleum products (the "marketing assets"). Charter initially characterized the transaction as a tax-free reorganization, see 26 U.S.C. § 351 (1988), but after an audit by the Internal Revenue Service ("IRS") it was determined that Charter's acquisition was a taxable asset purchase. The new characterization of Charter's transaction meant that Charter could not carry over Signal's basis in the assets; instead, the IRS determined a new basis for each of the assets, calculated by allocating the total purchase price of the transaction among the various purchased assets.

This allocation by the IRS proved quite controversial. In particular, the government attributed a relatively small fraction of the purchase price to the Houston Refinery. The resulting lower basis of the refinery adversely affected Charter's tax liability for 1971 and 1972: the lower value of the refinery translated into lower allowable depreciation deductions for those years, which in turn increased Charter's tax liability. Charter eventually paid the additional tax, then timely filed its claims for refund.

The essence of Charter's refund claims for 1971 and 1972 contested the IRS's allocation of the transaction's purchase price. Charter's main claim challenged the valuation of the Houston Refinery. Charter principally argued that the IRS's low valuation of the refinery reduced Charter's avail-

---

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Hugh H. Bownes, Senior U.S. Circuit Judge for the First Circuit, sitting by designation.

able depreciation deductions, resulting in higher taxes. In addition, Charter also specifically indicated to the IRS that the proposed change in the amount of basis allocated to the Houston Refinery would have a collateral tax effect on three other items because these other items, too, would acquire new bases. The changed bases on these three items, Charter argued, would have the following effects: 1) lower the gain that Charter previously realized on the sale of an airplane acquired from Signal, 2) lower the gain that Charter previously realized on the sale of a depreciable asset used in the refinery complex, and 3) increase allowable capital loss attributable to Charter's acquisition of stock in a Signal shipping company. Charter therefore claimed a refund relative to each of these three other items.

Charter had also sold the marketing assets shortly after the 1971 Signal acquisition. Conceivably, then, a different allocation of the total acquisition purchase price could also have a collateral tax effect on Charter's sale of the marketing assets. If these assets also had different bases, then Charter's previously realized gains or losses on the sale of the marketing assets might be different. However, Charter never mentioned the marketing assets in its claims for refund. Charter admits as much: "These sales [of the marketing assets], which are the subject of this appeal, were not expressly outlined in Charter's Claims for Refund." Appellant's Br. at 6.

### B.

After the IRS denied Charter's refund request, Charter filed this lawsuit. Subsequently, the government hired an independent firm to value the Houston Refinery. This independent appraisal placed a value on the refinery that was even lower than the value calculated by the IRS during the government's audit of the Charter–Signal transaction. Thus, the government realized that not only might it defeat Charter's request for higher refinery depreciation deductions (as argued in Charter's refund claims), but also that the independent valu-

ation might entitle the government to an equitable offset to any otherwise available Charter refund.

Before trial, the parties stipulated to the majority of the factual and legal issues relating to Charter's refund demand. However, the court was asked to resolve two principal remaining disputes. First, the court needed to decide whether the government could equitably offset any Charter recovery pursuant to the government's theory that the lower independent valuation of the Houston Refinery meant that Charter took excessive depreciation deductions in 1971–1972. Second, the court needed to determine whether Charter could now receive any tax benefits stemming from Charter's allegations about the tax treatment of the marketing assets, notwithstanding Charter's failure to outline such a contention in its refund claims.

The district court first held that the independent valuation dictated a finding that Charter had taken excessive depreciation deductions, entitling the government to an equitable offset of any Charter refund. *See* R2–86–6–7 (citing *Reuben H. Donnelley Corp. v. United States*, 257 F.Supp. 747, 760 (S.D.N.Y.1966)).[1] Next, the court ruled that it would not entertain Charter's arguments concerning the marketing assets. Finding that "[t]he subsequent sale of [the marketing assets] is separate and apart from the determination of the claim in the case sub judice," R2–86–7, the court held that the litigation of Charter's marketing assets claim was barred by the doctrine forbidding a taxpayer from advancing a claim that impermissibly varied from the claims outlined in the taxpayer's refund request. *See id.* at 7–8 (citing *Real Estate–Land Title & Trust Co. v. United States*, 309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. 542 (1940)). The court did not address whether or not Charter could utilize its marketing assets claim as an offset to the government's offset notwithstanding the impermissible variance.

Based upon the court's order, the parties jointly computed Charter's tax refund.

---

1. Charter has not challenged that determination on appeal.

Following the computations, the district court entered judgment in favor of Charter in the amount of $85,649 plus interest. Charter has appealed only the court's disposition of the marketing assets issue.

## II.

A taxpayer may not sue the United States for a tax refund until it first files a refund claim with the government. 26 U.S.C. § 7422(a) (1988). The applicable regulations accompanying section 7422(a) require the taxpayer to detail each ground upon which a refund is claimed. Treas. Reg. § 301.6402–2(b)(1). Subsequent litigation of the government's denial of a refund claim is limited to the grounds fairly contained within the refund claim. Federal courts have no jurisdiction to entertain taxpayer allegations that impermissibly vary or augment the grounds originally specified by the taxpayer in the administrative refund claim. *See, e.g., Angelus Milling Co. v. Commissioner,* 325 U.S. 293, 295–99, 65 S.Ct. 1162, 1163–65, 89 L.Ed. 1619 (1945); *United States v. Felt & Tarrant Mfg. Co.,* 283 U.S. 269, 272–73, 51 S.Ct. 376, 377–78, 75 L.Ed. 1025 (1931). This court and its predecessor have steadfastly enforced this rule. *See, e.g., Sanders v. United States,* 740 F.2d 886, 889–90 (11th Cir.1984); *Group Life & Health Ins. Co. v. United States,* 660 F.2d 1042, 1059 (5th Cir. Unit A Nov. 1981), *cert. denied,* 457 U.S. 1132, 102 S.Ct. 2958, 73 L.Ed.2d 1349 (1982); *Stoller v. United States,* 444 F.2d 1391, 1393–94 (5th Cir.1971).

We hold that the district court correctly declined to consider Charter's marketing assets claim on the basis of the variance doctrine. This claim indisputably was never mentioned by Charter in its refund claims. *See Stoller,* 444 F.2d at 1393. Such silence failed to put the government on notice of the marketing assets issue. *Sanders,* 740 F.2d at 890; *Stoller,* 444 F.2d at 1393. Further, "[i]t would have been very simple for the taxpayer[ ] here to state in [its] claim for refund" that it was also contesting the government's tax treatment of the marketing assets that Charter sold. *Stoller,* 444 F.2d at 1393. After all,

Charter specifically delineated and challenged the tax treatment of the three other items that Charter claimed were collaterally affected by the redetermination of the Houston Refinery basis—the airplane, the depreciable asset in the refinery complex, and the shipping company stock. Confronted with a refund claim that specifically included these three "collateral" challenges and omitted mentioning the existence of the marketing assets, the government could only "hazard a guess" about Charter's arguments with respect to the latter issue. *Id.* The government is not required to be so prescient. *Sanders,* 740 F.2d at 890; *Stoller,* 444 F.2d at 1393; *see also Continental Equities, Inc. v. Commissioner,* 551 F.2d 74, 81 (5th Cir.1977) (stating that the government is not required to presume correlative adjustments because "[a] taxpayer seeking a refund bears the burden of notifying the Commissioner that a refund is sought and of indicating the basis for the claim").

Charter nevertheless contends that it met the jurisdictional demands of the variance doctrine because although not specifically mentioned in the refund claim, the refund relating to the marketing assets "derives solely" from the claim that *was* mentioned by Charter—the government's allegedly erroneous allocation of basis to the Houston Refinery. Since allocating a different fraction of the purchase price to the refinery would necessarily change the fraction of the price that had been allocated to the marketing assets, Charter asserts, challenging the amount allocated to the refinery was sufficient to notify the government about the nature of the marketing assets claim. Charter invokes various phrases to describe its position on the intertwined nature of the Houston Refinery claim and the marketing assets claim. *See* Appellant's Br. at 18 ("flow[s] directly"); *id.* at 25 ("integral to"); Appellant's Reply Br. at 5 ("inextricably connected"); *id.* at 10 ("inevitable corollary"). However Charter's position is characterized, we reject it.

The law requires the taxpayer to do more than give the government a good lead

based upon the government's purported ability to infer interconnectedness. Although crystal clarity and exact precision are not demanded, at a minimum the taxpayer must identify in its refund claim the "essential requirements" of each and every refund demand. *Sanders,* 740 F.2d at 890; *see also id.* (taxpayer must *"detail* his claim"); *id.* (taxpayer must "state the exact basis of his claim"); *id.* (taxpayer failed to "allege *precisely the basis* " of his claim); *Stoller,* 444 F.2d at 1393 (government not required to discern *"the precise nature* of a taxpayer's claim"); *id.* (noting that taxpayers are statutorily required to *"set forth in detail* each ground upon which a refund is claimed and facts sufficient to apprise the commissioner of *the exact basis thereof"*); *Alabama By–Products Corp. v. Patterson,* 258 F.2d 892, 900 (5th Cir.1958) (holding that taxpayer must state *"[a]ll grounds"* and that "the Commissioner can take the claim at its face value and examine only those points to which his attention is *necessarily directed"*), *cert. denied,* 358 U.S. 930, 79 S.Ct. 318, 3 L.Ed.2d 303 (1959) (all emphasis added).[2]

 On the facts of this case, Charter failed to meet the essential requirements test. With respect to a refund claim based upon the allegedly erroneous treatment of an asset sale, the taxpayer must at least identify the particular assets at issue and state why those assets were treated improperly. Any other rule would fail to further the policy of the variance doctrine:

> If [the taxpayers] had [stated their grounds with particularity], perhaps this case would have never seen its way into this court. The Commissioner does not possess the time or resources to perform extensive investigations into the precise reasons and facts supporting every taxpayer's claim for refund. The need for investigation can be easily obviated by a taxpayer who takes the proper care in preparing his claim for refund.

*Stoller,* 444 F.2d at 1393. In this case, Charter did allege in its refund claims the essential requirements of the collateral issues relating to the airplane sale, the depreciable oil complex asset, and the shipping company stock. However, Charter was silent on the tax issues respecting the marketing assets. Charter neither identified those assets nor gave a reason for a refund based upon their prior sale. Accordingly, Charter's attempt to litigate the marketing assets question was an impermissible variance from its refund claim, which the district court properly rejected.

### III.

 Charter next argues that even if it was barred from litigating the marketing assets question as the basis of an independent refund claim, Charter remains entitled (under equitable principles) to utilize the precluded claim as an offset to the government's equitable offset. Stated differently, Charter contends that the district court erred by permitting the government to use an otherwise barred claim (excessive depreciation deductions as established by the independent appraisal of the Houston Refinery) without addressing Charter's ability to do the same.

We agree with Charter. Equity in these circumstances is a two-way street:

> The taxpayer is attempting to prove overpayment while the government asserts setoffs to prove the absence of an overpayment. We can find no reason to permit the government to raise items for which the statute of limitations prevents assessment of a deficiency and deny the taxpayer the corollary right to assert items in offset to the government's new issues.... We, therefore, will permit [the taxpayer] to raise these [barred] issues for the limited purpose of offsetting [the government's] offset issues.

*Union Pacific R.R. v. United States,* 182 Ct.Cl. 103, 389 F.2d 437, 447 (1968). Therefore, the district court incorrectly barred Charter from litigating the marketing as-

---

**2.** This requirement is not especially onerous for a corporate taxpayer utilizing sophisticated tax counsel.

sets question for *all* purposes. Even though the issue of the marketing assets impermissibly varied from Charter's refund claims, the issue could still be asserted by Charter as an equitable setoff to the government's excess depreciation offset.

■ The government does not contest a taxpayer's ability to utilize a barred claim as an offset to an offset. In fact, the United States admitted at oral argument that Charter's "theory of the offset is true." Instead, the government claims that Charter failed to preserve the argument for appeal. The government observes that the district court opinion did not even address the "offset to the offset" issue. Therefore, the government contends that "it was incumbent on [Charter] to seek the Court's resolution." Appellee's Br. at 32. Because Charter did not seek an explicit post-judgment ruling on this issue (*e.g.*, through a motion to clarify or amend) before jointly calculating the refund due under the district court's order (a process that took over a year), the government asserts that Charter has lost the claim.

We find the claim to be adequately preserved. In the parties' joint pre-trial stipulation, Charter properly raised the issue of its power to utilize an otherwise barred claim as an offset. R2–69–15. Charter also argued that the marketing assets issue could set off the government's offset in the company's pre-trial and post-trial briefs to the court. R2–68–9–10; R2–85–46–47. The district court erred by not addressing and granting the request. No civil procedure rule requires Charter to first seek a clarification before raising this error on appeal. We admit that the year-long calculations may have been painfully premature in light of the fact that Charter's "offset to the offset" issue remained in limbo. Nevertheless, the government, just as easily as Charter, could have avoided that problem. Moreover, until such a computation is accomplished, it is often difficult to ascertain whether the amount of a theoretically available offset actually exists or is worth asserting (i.e., is not de minimis).

## IV.

For the above reasons, we VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion. Even though the court correctly concluded that it had no power to entertain Charter's claim about the marketing assets, the court was obligated to allow Charter to assert that claim for the sole purpose of offsetting the government's excessive depreciation offset.

## VACATED AND REMANDED.

JOHNSON, Senior Circuit Judge, concurring in part and dissenting in part.

I concur with the majority's discussion of the variance doctrine and with the majority's ultimate conclusion that the variance doctrine precludes Charter from directly raising the issue of a refund based on a change in the basis for the "marketing assets." *See Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 299, 65 S.Ct. 1162, 1165, 89 L.Ed. 1619 (1945); *Alabama By-Products Corp. v. Patterson*, 258 F.2d 892, 900 (5th Cir.1958), *cert. denied*, 358 U.S. 930, 79 S.Ct. 318, 3 L.Ed.2d 303 (1959); *Mallette Bros. Constr. Co. v. United States*, 695 F.2d 145, 155–56 (5th Cir.), *cert. denied*, 464 U.S. 935, 104 S.Ct. 341, 78 L.Ed.2d 309 (1983); *cf. Burrell v. Fahs*, 232 F.2d 163, 166 (5th Cir.1956). Simply put, the IRS is not required to peruse the facts set forth in refund claims in order to provide refund claimants with potentially applicable, but unraised, factual or legal bases for a refund.

However, I dissent from the majority's conclusion that Charter may obtain indirectly what it may not obtain directly. *See Union Pacific R.R. Co. v. United States*, 182 Ct.Cl. 103, 389 F.2d 437, 447 (1968); *see also Lewis v. Reynolds*, 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293 (1932); Rev. Rul. 81–87, 1981–1 C.B. 580. I would hold that the invited error rule bars Charter from raising its "offsetting the government's offset" claim on appeal. *See Thunderbird, Ltd. v. First Fed. Sav. & Loan Assoc.*, 908 F.2d 787, 794 (11th Cir.1990); *Woods v. Allied Concord Fin. Corp.*, 373 F.2d 733, 734 (5th Cir.1967); *United States*

v. Wurtsbaugh, 140 F.2d 534, 536–38 (5th Cir.1944); see also Westerman v. Sears, Roebuck & Co., 577 F.2d 873, 883 (5th Cir.1978).

It is a "cardinal rule" of appellate procedure "that a party may not challenge as error a ruling or other trial proceeding invited by that party." Crockett v. Uniroyal, Inc., 772 F.2d 1524, 1530 n. 4 (11th Cir.1985). Charter jointly stipulated to both the amount of the refund ordered by the district court in its July 29, 1991 final judgment and to the calculations used to arrive at that final amount. Charter did not raise the issue of offsetting the government's offset in its joint submission to the district court. "Having induced the court to rely on a particular erroneous proposition of law or fact, a party in the normal case may not at a later stage of the case use the error to set aside the immediate consequences of the error." Harvis v. Roadway Express, Inc., 923 F.2d 59, 64 (6th Cir.1991). To the extent the district court erred in entering judgment on the figures submitted by Charter, Charter invited any such error. See Thunderbird, Ltd., 908 F.2d at 794; Woods, 373 F.2d at 734; Wurtsbaugh, 140 F.2d at 536–38.

To be sure, Charter did raise the offsetting the offset issue prior to the district court's order of July 23, 1990, which required the parties to submit figures calculating the final refund amount, if any, that Charter was entitled to receive. As the majority explains, the district court, for whatever reasons, failed to address the specific issue of offsetting the government's offset in its July 23, 1990 order. In light of this failure, the most prudent course of action for Charter would have been to file a Rule 59(e) motion requesting the district court to amend its order by

specifically addressing this issue. See American Home Assurance Co. v. Glenn Estess & Assoc., Inc., 763 F.2d 1237, 1238–39 (11th Cir.1985); Fed.R.Civ.P. 59(e). However, Charter did not file such a motion.[1]

Had the July 23, 1990 order been the district court's last action in this case, I would agree with the majority that the lower court's judgment should be vacated and remanded. However, the July 23, 1990 order did not result in the immediate entry of final judgment. The district court charged the parties with submitting both calculations showing the proper amount of Charter's refund and the final amount of any refund due Charter. Thus, Charter had a clear opportunity to raise the issue of offsetting the offset prior to the entry of final judgment. Rather than submit alternate figures or in any other way apprise the district court of the perceived error in its July 23, 1990 order, Charter instead chose to submit erroneous figures to the district court, which it represented to the district court as accurately reflecting the amount of the refund without qualification. Although provided with a clear chance to apprise the district court of its concerns regarding the offsetting the offset issue, Charter instead chose to submit figures that it considered at best incomplete and at worst patently incorrect.[2] Moreover, the parties spent an entire year negotiating over the figures to be submitted to the district court. During this period, Charter did nothing whatsoever to put the district court on notice of the offsetting the offset issue.

In response, Charter claims that it failed to raise the issue of offsetting the offset

---

1. I realize, of course, that because Charter raised the issue of offsetting the offset prior to the district court's issuance of its July 23, 1990 order, a Rule 59(e) motion was not mandatory in order for Charter to preserve this issue for appeal. Cf. American Home, 763 F.2d at 1238–39. My point is not that Charter was required to file a Rule 59(e) motion, but rather that Charter should have filed such a motion. I also note that the invited error problem presents a question entirely independent of the question as to whether a Rule 59(e) motion was mandatory.

I.e., although Charter properly raised the offsetting the offset issue prior to the July 23, 1990 order, Charter's subsequent invited error creates an independent bar to consideration of the issue on appeal.

2. Unlike the majority, see supra, at 1580–81, I do not believe that the obligation to apprise the district court of its omission fell on the appellee. Cf. Fryman v. Federal Crop Ins. Corp., 936 F.2d 244, 251 (6th Cir.1991).

either during the twelve months between the July 23, 1990 order and the July 29, 1991 final judgment or in the joint submission calculating the refund because it believed the district court had rejected the offsetting the offset theory. In point of fact, the district court had said *nothing* regarding this theory. Charter's proffered excuse for agreeing to the jointly submitted figures is grossly inadequate given the facts of this case and should be rejected.

For the foregoing reasons, I dissent.