[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 96-2704

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
10/10/00
THOMAS  K. KAHN
CLERK

D. C. Docket No. 92-00940-MD-CIV-OR

IN RE:
CARBON DIOXIDE INDUSTRY ANTITRUST LITIGATION,

STATE OF FLORIDA, ex rel., et. al.,

Plaintiffs,

FOSTER POULTRY FARMS and MOHAWK
PACKING COMPANY, B.C. ROGERS
PROCESSORS, INC., et. al.,

Plaintiffs-Appellants,

versus

LIQUID AIR CORP., et. al.,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(October 10, 2000)

Before TJOFLAT, HULL and KRAVITCH, Circuit Judges.

TJOFLAT, Circuit Judge:

Over a period of months during the early 1990s, these consolidated cases were transferred to the United States District Court for the Middle District of Florida by the Judicial Panel on Multidistrict Litigation for pretrial proceedings pursuant to 28 U.S.C. § 1407. At the conclusion of those proceedings, the parties agreed that the cases would remain in the Middle District of Florida for trial. Some of the cases settled on the eve of trial; the remainder were tried to a verdict for the defendants. The plaintiffs appeal. The question now arises whether the Supreme Court's decision in Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 118 S. Ct. 956, 140 L. Ed. 2d 62 (1998), requires that the judgment of the district court be vacated and appellants' lawsuits be returned to their original districts. Because appellants explicitly requested that the district court try their cases, we affirm.

I.

In 1992, numerous actions were brought in district courts around the country by users of bulk liquid carbon dioxide ("$CO_2$"), claiming antitrust violations by defendants The BOC Group, Inc. ("BOC"), Liquid Air Corporation ("Liquid Air"), and Liquid Carbonic Corporation ("Liquid Carbonic"), all of whom are major producers of bulk liquid $CO_2$. As the litigation progressed, a class of plaintiffs was certified.[1] Thereafter, a significant number of plaintiffs (the "Anheuser-Busch Plaintiffs") opted out of the class and filed a separate suit. Pursuant to its authority under 28 U.S.C. § 1407(a) (1994),[2] the Judicial Panel on Mulitdistrict Litigation ("JPML") transferred all of the cases from the various districts in which they were filed to the Middle District of Florida (the "transferee court") for coordinated pretrial proceedings.

During the course of these proceedings, appellants opted out of the plaintiff class and filed separate actions against BOC, Liquid Air, and Liquid Carbonic.

---

[1] On April 19, 1993, the plaintiff class was certified as:
all individuals or entities (excluding all governmental entities and defendants and other carbon dioxide producers and their respective subsidiaries and affiliates) in the continental United States that purchased carbon dioxide directly from any defendant (including their respective subsidiaries or affiliates) at any time during the period of January 1, 1968 until October 22, 1992.

[2] 28 U.S.C. § 1407(a) (1994) provides in pertinent part:
When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. . . . Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred . . . .

3

Specifically, B.C. Rogers Processors, Inc., B.C. Rogers Poultry, Inc., Choctaw Maid Farms, Inc., Forest Packing Company, Inc., and Marshall Durbin of Tupelo, Inc. ("the Mississippi Plaintiffs") filed suit in the United States District Court for the Southern District of Mississippi, and Mohawk Packing Company ("the California Plaintiff") filed suit in the United States District Court for the Northern District of California. Separate orders by the JPML transferred the Mississippi and California cases as "tag along" actions to the Middle District of Florida for coordinated pretrial proceedings.

The transferee court held a final pretrial conference on December 11, 1995, at which appellants were in attendance. The parties stipulated, and the Final Pretrial Order stated, that jurisdiction and venue were proper in the Middle District of Florida, and that the cases would be tried by the transferee court in Orlando on Monday, February 5, 1996.

On Friday, February 2, the court held an omnibus hearing at which it entertained scores of evidentiary motions in limine and otherwise readied the case for jury selection and trial. On Monday, February 5, after the parties had assembled in the courtroom for jury selection, the court was informed that during the preceding weekend the following settlements had been reached: the class plaintiffs had settled with Liquid Air and Liquid Carbonic (the class plaintiffs had

4

settled with BOC approximately a year earlier); the Anheuser-Busch Plaintiffs had settled with Liquid Air and Liquid Carbonic; and the Anheuser-Busch Plaintiffs and BOC were still negotiating. If BOC and the Anheuser-Busch Plaintiffs settled, only the Mississippi and California Plaintiffs would remain as plaintiffs in the case.

At this point on February 5, the court informed counsel that it was considering whether, in light of these settlements, to return the remaining cases to the districts in which they were filed. In response, BOC's counsel announced that it would not settle with the Anheuser-Busch Plaintiffs unless appellants' cases were tried in Orlando. Believing that BOC's position was reasonable and that the litigation could be most efficiently managed in Orlando, the court adhered to the Pretrial Order and stated that it would try the cases there.[3]

Upon hearing the court's announcement that the trial would be held in Orlando, the Mississippi Plaintiffs moved the court to issue a suggestion of remand to the JPML, or in the alternative, to transfer the case to the Southern District of Mississippi. They contended that the court had to choose one of these alternatives because it lacked subject matter jurisdiction to litigate the case to a conclusion, and because proper venue laid in the Southern District of Mississippi. The California

---

[3] The trial was rescheduled to begin on February 20, 1996.

Plaintiff joined in these motions, contending that the appropriate venue for its case was the Northern District of California.  All motions were denied.

Appellants thereafter filed an emergency motion with the JPML to remand their cases to the districts in which they were filed pursuant to 28 U.S.C. § 1407(a) and Rule 14(b) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation.[4]  While that motion was pending, appellants petitioned this court for a writ of mandamus requiring the district court to file a suggestion of remand with the JPML.  We stayed the trial pending resolution of the petition, which we denied. After we denied the writ, the district court rescheduled the trial for March 4, 1996. The JPML did not reach appellants' motion for remand until April 15, 1996, at which time it denied the motion as moot because the trial of the case had already been held and judgment had been entered for the defendants on March 21.

The Mississippi and California Plaintiffs appealed, arguing in part that the

---

[4] At the time this litigation was ongoing in the district court, Rule 14(b) of the Multidistrict Rules stated:

> Each transferred action that has not been terminated in the transferee district court shall be remanded by the Panel to the transferor district for trial, unless ordered transferred by the transferee judge to the transferee or other district under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406.  In the event that the transferee judge so transfers an action under 28 U.S.C. § 1404(a) or 1406, no further action of the Panel shall be necessary to authorize further proceedings including trial.  Actions that were originally filed in the transferee district require no action by the Panel to be reassigned to another judge in the transferee district at the conclusion of the coordinated or consolidated pretrial proceedings affecting those actions.

This rule was subsequently modified by the Supreme Court's decision in <u>Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach</u>, 523 U.S. 26, 118 S. Ct. 956, 140 L. Ed. 2d 62 (1998), the effect of which is at issue in the instant appeal.

6

district court denied them due process of law by refusing to return the cases to their original districts.[5] We affirmed without opinion, and the United States Supreme Court granted certiorari. The Court vacated our prior judgment and remanded the case for reconsideration in light of its recent decision in Lexecon, 523 U.S. 26, 118 S. Ct. 956.

The precise issue to be addressed is whether Lexecon requires this court to vacate the district court's judgment and refer the cases to the JPML for remand to their original districts. We hold that Lexecon does not require such relief; we therefore adhere to our earlier disposition which affirmed the district court.

## II.

### A.

In Lexecon, the Ninth Circuit encountered a section 1407 issue similar to the one presented here. Lexecon was initially one of the defendants in a class action brought against Charles Keating and the American Continental Corporation in connection with the failure of Lincoln Savings and Loan. Lexecon, 523 U.S. at 29, 118 S. Ct. at 959. It and other actions arising out of that failure were

---

[5] Appellants contended alternatively that various trial court errors required the vacation of the district court's judgment and a new trial. We found no merit in appellants' contentions and affirmed the district court's rulings under 11th Cir. R. 36-1.

7

transferred for pretrial proceedings to the District of Arizona under section 1407(a), which authorizes the JPML to transfer civil actions with common issues of fact "to any district for coordinated or consolidated pretrial proceedings," but provides that the JPML shall remand any such action to the original district "at or before the conclusion of such pretrial proceedings." Id. (quoting 28 U.S.C. § 1407(a)). Lexecon settled with the plaintiffs before the end of pretrial proceedings, and the claims against it were thereafter dismissed.

Lexecon subsequently brought a diversity action in the Northern District of Illinois against two law firms – Milberg and Cotchett – which served as counsel for the class action plaintiffs. Milberg and Cotchett moved for, and the JPML ordered, a section 1407(a) transfer to the District of Arizona where the remainder of the Lincoln Savings litigation was still ongoing. Once all plaintiffs other than Lexecon had settled, Lexecon moved the district court to refer the case back to the JPML for remand to the Northern District of Illinois. Milberg and Cotchett opposed the motion because discovery was still incomplete, and filed a countermotion requesting the court to "transfer" the case to itself for trial pursuant to 28 U.S.C. § 1404(a).[6] While deferring its ruling on the parties' respective motions, the court

_____

[6] 28 U.S.C. § 1404(a) (1994) states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

granted summary judgment in favor of the law firms on all claims except one brought in defamation against Milberg, and dismissed the law firms' counterclaims. The court then granted the countermotion (thereby assigning the case to itself for trial) and denied Lexecon's request that the case be referred back to the JPML for remand. See id. at 29-31, 118 S. Ct. at 959-60.

The surviving defamation claim went to trial in the District of Arizona, resulting in a judgment for Milberg. Lexecon appealed the transfer order to the Ninth Circuit,[7] which affirmed on the ground that "permitting the transferee court to assign a case to itself upon completion of its pretrial work was not only consistent with the statutory language but conducive to efficiency." Id. at 32, 118 S. Ct. at 960.

The Supreme Court granted certiorari and reversed, holding that a district court conducting pretrial proceedings pursuant to section 1407(a) has no authority to invoke section 1404(a) to assign a transferred case to itself for trial. See id. at 40-41, 118 S. Ct. at 964. The decision invalidated the then-existing version of Rule 14(b) of the Rules of Procedure of the Judicial Panel on Multidistrict

---

[7] Lexecon previously filed a petition for mandamus after the district court's ruling on its motion to refer the case to the JPML, which was denied by the Ninth Circuit because "the [section 1404(a)] transfer order [could] be appealed immediately along with other issues in the event the petitioners [lost] on the merits [at trial]." Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, No. 95-70380, (9th Cir. July 21, 1995).

Litigation, which provided that "[e]ach transferred action that has not been terminated in the transferee district court shall be remanded by the Panel to the transferor district for trial, unless ordered transferred by the transferee judge to the transferee or other district under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406." Notwithstanding Rule 14(b), the Court found that the remand requirement in section 1407 (mandating that all transferred actions "shall" be remanded by the JPML) created "an obligation impervious to judicial discretion," id. at 35, 118 S. Ct. at 962, and therefore could not be read to accommodate a district court's self-assignment of the case under section 1404(a).

B.

Despite their pretrial stipulation that venue was proper in the Middle District of Florida, appellants request relief from judgment on the ground that the cases should have nevertheless been remanded to their original districts pursuant to section 1407. They rely on Lexecon to support their argument that section 1407 is self-executing, and thus rendered the transferee court powerless to retain control of the cases beyond the conclusion of pretrial proceedings regardless of appellants' acquiescence. The circumstances of this case, however, are clearly distinguishable from Lexecon.

10

Far from requesting that their cases be remanded to the districts in which they were filed, appellants' position throughout the proceedings in the transferee court was that the cases should be tried in Orlando. For example, in their response to a motion BOC filed in July 1995, in which BOC requested a severance so that the cases against it could be tried separately, appellants claimed that:

> [i]f granted, BOC's motion would result in an egregious waste of judicial resources and in unnecessary expense to all parties, other than BOC. . . . [I]f the court ordered separate trials of the class and individual claims, the trial will be twice as long and either the class or the other defendants would be prejudiced as a result. . . . Plaintiffs as a group intend to put on documentary and anecdotal evidence of the defendants [sic] involvement in a scheme to fix prices. . . . Multiple trials certainly will not be more convenient than a single trial would be. . . . Nor would the goals of expeditiousness or economy be served by separate trials. BOC's motion [for separate trials] should be denied.

Appellants were fighting to keep their cases in the Middle District of Florida, not to get them out.

Moreover, appellants stipulated at the final pretrial conference, and the court stated in the Final Pretrial Order, that the Middle District of Florida had subject matter jurisdiction over all claims, and that "[v]enue [was] proper under 28 U.S.C. § 1391." To be sure, parties may not stipulate subject matter jurisdiction. See West Peninsular Title Co. v. Palm Beach Cty., 41 F.3d 1490, 1492 n.4 (11th Cir. 1995). Venue, however, is another matter. "The locality of the law suit – the place

11

where judicial authority may be exercised – though defined by legislation relates to the convenience of litigants and as such is subject to their disposition." Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 168, 60 S. Ct. 153, 154, 84 L. Ed. 167 (1939); see also Olberding v. Illinois Cent. R.R. Co., 346 U.S. 338, 340, 74 S. Ct. 83, 85, 98 L. Ed. 39 (1953) (noting that venue restriction "is not a qualification upon the power of the court to adjudicate, but a limitation designed for the convenience of litigants, and, as such, may be waived by them"). It is clear from the Court's opinion in Lexecon that section 1407 is not a jurisdictional limitation, but rather "a venue statute that . . . categorically limits the authority of courts (and special panels) to override a plaintiff's choice [of forum]." Lexecon, 523 U.S. at 42, 118 S. Ct. at 965.

In their representations to the district court, appellants' choice of forum was the Middle District of Florida. Appellants freely admit that "[s]o long as the various cases were scheduled for consolidated trial, the[y] expressed no objection to a single trial in Orlando, Florida."[8] Furthermore, appellants contended that

---

[8] Appellants' brief reveals why the Mississippi and California Plaintiffs waited until the day of trial to request a suggestion of remand to their original districts:

At the time this case was set to go to trial, the attorneys for each of the several Plaintiff groups had agreed upon a division of labor for the trial. As is not unusual in cases of this type the bulk of the trial work, including direct examination of Plaintiffs' major witnesses and cross-examination of Defendants' major witnesses, was to be done by counsel for the class and the largest group of opt-out plaintiffs. So long as the various cases were scheduled for consolidated trial, the Plaintiffs/Appellants expressed no objection to a single trial in Orlando,

12

"[t]he Middle District of Florida was a district in which these cases could have been brought."[9] Indeed, appellants' every action belies their assertion to the district court on the day of trial that "[w]e, of course, have been contending from the get go . . . that we want to be in Mississippi."[10]

If the Mississippi and California Plaintiffs believed that they had a right to have their cases remanded to their original districts, they should not have asked the court to try the case in Orlando. "Having induced the court to rely on a particular erroneous proposition of law or fact, a party in the normal case may not at a later stage of the case use the error to set aside the immediate consequences of the

---

Florida.
As noted, supra, the plaintiff class and the largest group of opt-out plaintiffs (the Anheuser-Busch Plaintiffs) had settled or were in the process of settling with all defendants on the day that appellants first moved the district court to refer the cases back to the JPML for remand.

[9] When trial in Orlando became less convenient, however, appellants tried to switch horses mid-stream, requesting remand and arguing to the district court that "[t]his is . . . a forum in which this case could not have been originally brought . . . ." (emphasis added).

[10] In the hearing the district court held on January 12, 1994 to set a trial date, counsel for defendant Liquid Air stated:
I have heard, I believe both on and off the record, suggestion by one or more of the attorneys for Plaintiffs in this case, that they may wish to file a motion to remand these cases for trial back to the district in which the actions were originally filed after this court has ruled on the summary judgment motions. The question as to remand . . . will be one which will require briefing and decision by this court. I am unclear at this time . . . whether the decision to seek remand has been made by any individual plaintiffs.
We cannot find, nor has counsel called to our attention, any objection made on the record by Mississippi or California Plaintiffs to the trial of the cases in Orlando before the trial was to commence on February 5, 1995.

13

error." Charter Co. v. U.S., 971 F.2d 1576, 1582 (11th Cir. 1992) (internal citation omitted).

In sum, appellants' actions throughout pretrial proceedings make this case clearly distinguishable from Lexecon. Lexecon requested remand early in the case, insisted that proper venue lay in the Northern District of Illinois (where the case had been filed), and "continuously objected to an uncorrected categorical violation of the [section 1407] mandate," Lexecon, 523 U.S. at 43, 118 S. Ct. at 966, when the district court refused to issue a suggestion of remand. Conversely, appellants in the instant case not only failed to raise the issue of remand until the day of jury selection, but actually stipulated that venue was proper in the Middle District of Florida and consistently urged the district court to try the case in Orlando. "It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." U.S. v. Ross, 131 F.3d 970, 988 (11th Cir. 1997) (quoting Crockett v. Uniroyal, Inc., 772 F.2d 1524, 1530 n.4 (11th Cir. 1985) (internal quotes omitted)). To the extent the district court may have erred in refusing to issue a suggestion of remand to the JPML, appellants invited any such error and may not be heard to complain of it on appeal.

### III.

For the foregoing reasons, the judgment of the district court is

14

AFFIRMED.